287 So.2d 73 (1973)
STATE of Florida, Petitioner,
v.
John L. BRYAN, Respondent.
No. 42849.
Supreme Court of Florida.
November 14, 1973.
Rehearing Denied January 11, 1974.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for petitioner.
Manuel M. Garcia, Tampa, for respondent.
DEKLE, Justice.
Certified question hereinafter appearing vaults this second degree murder conviction to our Court for review upon challenged jury instructions,[1] as reported at 271 So.2d 197 (Fla.App.1st 1972).
Respondent-defendant was indicted by the Volusia County Grand Jury for the crime of first degree murder in a New Year's Eve murder in a bar. The testimony presented at the trial established that some trouble arose between the respondent and the deceased which resulted in the respondent shooting the deceased causing his *74 death. Other evidence offered by the State indicated that the shooting may have been unintentional and that the defendant meant instead to strike the deceased with the pistol. The jury adjudged the defendant guilty of second degree murder and he was given an indeterminate sentence of not less than six months nor more than twenty years.
At the close of all the evidence, the trial judge without any objection from counsel gave some 23 jury instructions on the criminal offenses of murder in the first degree, in the second degree and manslaughter. However, in his instructions, the judge tracked the statute (§ 782.04(2) on second degree murder) and did not define the terms "evincing a depraved mind" in the second degree murder charge and "culpable negligence" as related to manslaughter. Respondent-defendant moved for a new trial challenging the propriety of the jury instructions pertaining to murder in the second degree and manslaughter. Upon review, the trial judge denied this motion.
The First District Court reversed and remanded for a new trial on the ground that the trial judge in his instructions to the jury failed to define and explain the meaning of "evincing a depraved mind" and "culpable negligence." According to the district court, these legal terms are not "commonly used in every day life and conversation" and accordingly should have been defined and explained by using common everyday examples, such as those stated in the Florida Standard Jury Instructions for Criminal Cases.[2] The court asserted that "any substantial deviation from use of these instructions [Standard Jury Instructions] will almost always end in error on the part of the trial court." In conclusion, the district court relied on Robles v. State, 188 So.2d 789 (Fla. 1966), and said the trial judge's action constituted fundamental error notwithstanding defense counsel's failure to object prior to the jury instructions.
One month before the First District rendered its opinion in the present case, the same DCA on August 10, 1972, filed an opinion in Padgett v. State, No. P-470 (1972).[3] There the First District in reversing the defendant's conviction and ordering a new trial found that the trial judge's jury instruction on manslaughter explaining and defining the term "simple negligence" in addition to "culpable negligence" was misleading and prejudicial to the defendant. In reaching this conclusion, the First District Court recognized that the jury instruction given by the trial judge tracked the Florida Standard Jury Instructions for Criminal Cases. Nevertheless, the DCA said these Standard Jury Instructions are not to be administered "automatically or blindly regardless of the circumstances." In this connection, it was held in light of the facts presented that the instruction including an explanation of "simple negligence" confused and misled the jury.
In reviewing its opinions in Padgett and the present case, the district court recognized the possibility of an inconsistency in those decisions and accordingly certified the instant case to us via the following query:
"Is the Florida Standard Jury Instruction in Criminal Cases relating to the offense *75 of manslaughter a correct and accurate statement of the law and a full and complete instruction to the jury in the trial of such offense as held by this Court in the case sub judice, or is it an erroneously misleading instruction to the jury in the trial of such offense as held by this Court in the case of Claude Padgett v. State of Florida, Case No. P-470, Opinion Filed August 10, 1972?"
The Florida Jury Instructions should be used, to such extent as may be applicable in the judgment of the trial court, but it does not follow, as the First District seems adamant in saying, that such instructions must be literally given in each and every case,[4] and even in the instance where no objection has been made (as here) to a charge which varies from the standard charge. We do not agree that "Any substantial deviation from use of these instructions will almost aways end in error on the part of the trial court."
Our caveat in the general approval of these, as in other jury instructions (240 So.2d 472 (Fla. 1970)), makes express reference to the fact that the approval is only "generally" of "the theory and technique" involved "as recommended by the Committee and embodied in its proposed instructions."
We then said:
"The Court will, accordingly, authorize the publication and use of such instructions, but without prejudice to the rights of any litigant objecting to the use of one or more of such approved forms of instructions. The Court recognizes that the initial determination of applicable substantive law in every case should be made by the trial judge and that it would be inappropriate for the Court at this time to consider the recommended instructions with a view to adjudging that the legal principles embodied in the recommended instructions correctly state the law of Florida. Similarly, the Court recognizes that no approval of the forms by the Court could relieve the trial judge of his responsibility under the law properly and correctly to charge the jury in each case as it comes before him. This order is not to be construed as any intrusion on that responsibility of the trial judges. The Court is confident that the forms of instructions recommended by the Committee state as accurately as a group of experienced lawyers and judges could state the law of Florida in simple understandable language."
It is apparent that the Supreme Court's approval of recommended committee instructions is not iron clad or carte blanche and must be applied in each instance as appropriate.
By this Court's approval of the jury instructions for publication, it was not intended that they be iron clad, because we recognized the importance of the trial judge on the scene who has the "feel" of the case, the psychology of its movement through trial and what aspects appear from subtle inflections and overtones to be important in the jury's mind and for its decision. That is one of the reasons that a trial court's decision has historically had the presumption of correctness on appeal. These are matters, as we have repeatedly said, that are not apparent from the "cold record". What is important is that sufficient instructions  not necessarily academically perfect ones  be given as adequate guidance to enable a jury to arrive at a verdict based upon the law as applied to the evidence before them. The evidence presented in particular cases will, of course, often vary what instructions apply, or whether certain instructions apply.
We do not deprecate the district court's strong support of our approved jury instructions; their acceptance and use are indeed encouraged; we simply acknowledge that these "approved instructions" are "standards" and a slight deviation is not fatal. Neither can they be perfect in anticipating *76 the exact situation in every case, nor all that will occur in a trial, including the many facets which take place in the drama of the courtroom. Only the trial judge as the "producer and director", in a sense, on the stage during the "production" can most successfully submit the entire drama to a fair judgment of the critics, namely, the jury. The appellate courts' "morning reviews" are secondary at best and must deal only with the essential correctness of applicable law after the curtain has been brought down at the trial level.
Addressing the immediate question, we agree that the definition in the standard jury instructions of culpable negligence would be desirable but in the case sub judice we do not find, in absence of objection, its exclusion to be fundamental error as a basis for reversal. Likewise, the elaboration in the standard charge on second degree murder would have been appropriate and even wise to add to the charge below.[5] This would have enlarged the use of the words "a depraved mind regardless of human life" but, absent objection, the failure to add this enlargement of the statute by the standard charge was not fatal.
We disagree that the term "depraved mind regardless of human life" is one which of necessity, absent a request for an instruction or an objection to its not being given, creates fundamental error. It is frankly our view that the average juror pretty well understands what a depraved mind is, and particularly where it is noted at least in partial definition as one which has no regard for human life. This was sufficient for the jury's evaluation in our judgment and we do not find the charges as given to be so recondite in their meaning as to escape the jury's understanding. Sometimes we underestimate the intelligence and comprehension of our juries; they do not have to have every single detail spelled out to them, for they are accepted on the basis of their average and ordinary understanding and intelligence in the ordinary matters of life and in applying the evidence. Furthermore, jurors enjoy the benefit of their composite knowledge, and the privilege of requesting further instruction if desired.
The charge actually given was the historical instruction given over hundreds of cases during periods prior to the new suggested standard charge in which convictions have been upheld. The definition given of second degree includes the words mentioned of:
"Perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life... ."
Then follows the manslaughter definition as: "The killing of a human being by the act, procurement, or culpable negligence of another ..." where not excusable homicide nor murder as hereinabove defined.
The intentional and forceful striking of another person in anger with a loaded pistol (taking this version of the evidence most beneficial to the defendant) which results in the discharge of that weapon, killing the victim, seems rather plainly to fall within the second degree murder conviction as "perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life."
The giving of "examples" by the court in its charge as to what acts are "imminently dangerous," etc., as the district court suggests, can itself be dangerous for the court to do; it may easily lead to confusion or inapplicability of the evidence peculiarly involved in the case, and can as well constitute an improper comment *77 upon the evidence by the court. This is for the jury. We therefore do not join in this recommendation for related examples by a court beyond those which are in the standard instructions or which present themselves as particularly applicable to the facts at hand. This point is demonstrated by the same district court's contemporary holding in Padgett v. State, supra, reversing the trial court for indulging in such an inappropriate reference to a definition of simple negligence which is in the manslaughter charge at p. 91 of those same Supreme Court Standard Jury Instructions for suggested guidance. The district court's point in Padgett was that the defendant could only be found guilty of the charge of manslaughter if his negligence was culpable and that therefore a definition of simple negligence provided the jury with a basis for a possibly inappropriate application of such other definition given of simple negligence merely by its being contained in the court's charge.
The reference in the standard charge to the definition of ordinary or simple negligence would appear to us to be a very logical contrast to the culpable negligence that was required in Padgett. Sometimes such contrast best demonstrates the real meaning of that which is involved and since the court's overall charge makes it clear that it is culpable negligence that is required, it seems clear to us that a jury of the required ordinary understanding would apply such requirement of culpable negligence and would treat the related definition of simple negligence as intended, namely, the contrasting simple negligence definition as an aid in arriving at what is culpable. The late eminent and erudite Justice Campbell Thornal applied just this contrast to arrive at what became a reasonable and understandable meaning of the distinction between simple, or ordinary, negligence and the contrasting gross negligence applied in then applicable guest passenger situations under the old guest statute. Justice Thornal described the latter as being that which was "most likely" to cause harm to others.[6]
If we must choose between the two "theories" or viewpoints of Padgett and Bryan sub judice as to our Supreme Court Instructions, issued from time to time, we would have to agree in theory with the view in Padgett that they are not to be literally applied in every case, the object being to make the pattern fit the cloth rather than the cloth the pattern. But, as above stated, we do not view as error the inclusion of the "simple negligence" definition merely for purposes of contrasting with "culpable negligence."
We must retain our sense of humor in viewing such matters, as is smilingly reflected in the jestful comment enjoyed privately in our profession that, "The Supreme Court is not always right because it is infallible, but because it is alway last!"
Absent objection to the charges in question, and finding no fundamental error, we view the charges of the trial judge as being sufficient and proper under the circumstances before the court at the trial.
The question certified is in the alternative. We answer affirmatively that Standard Jury Charge for Criminal Cases relating to manslaughter is correct and was proper to have been given, but the more limited charge sub judice did not constitute fundamental error justifying reversal.
The cause should accordingly be remanded for reinstatement of the guilty verdict, judgment and sentence.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN and McCAIN, JJ., concur.
NOTES
[1] Fla. Const. art. V, § 3(b) (3), F.S.A. (1973).
[2] "MURDER  SECOND DEGREE  Murder in the second degree is the killing of a human being by the perpetration of an act imminently dangerous to another and evincing a depraved mind regardless of human life although without a premeditated design to effect the death of any particular individual.

"An act is one imminently dangerous to another and evincing a depraved mind regardless of human life if it is an act (or a series of acts) which (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life."
[3] The First District has entered an order staying the proceedings in Padgett pending the outcome of the present case in this Court.
[4] Acting Chief Judge Rawls expresses a similar reservation in DCA special concurring opinion.
[5] See footnote 2.
[6] Webster v. Kemp, 164 So.2d 814 (Fla. 1964).