GRIMES, Judge.
On this appeal from a conviction of first degree murder with its resulting life sentence, the only point of merit relates to the contention that the court committed fundamental error in failing to properly charge the jury on the crime with which the defendant was charged.
The state attorney’s office submitted requested jury instructions to the trial judge. The defendant’s attorney reviewed and approved these instructions. These instructions were read to the jury. No objections were made, and no additional instructions were requested. From a perusal of the instructions so given, it is obvious that they were intended to track the Florida Standard Jury Instructions as applicable to this case. Through inadvertence and unknown to either counsel or the trial judge until this appeal, the instructions on first degree murder which are set forth on pages 68 and 69 of the standard jury instructions were not given because they were not included in the requested instructions. The issue before us is whether the failure to give these particular instructions constituted fundamental error.
*1139 The omitted instructions set forth on pages 68 and 69 of the Florida Standard Jury Instructions in Criminal Cases read as follows:
“MURDER — FIRST DEGREE F.S. 782.04(l)(a)
First Murder in the first degree is Degree the unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed by a person engaged in the perpetration of (or in the attempt to perpetrate) any of the following crimes: arson, involuntary sexual battery, robbery, burglary, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb, or which resulted from the unlawful distribution of heroin by a person over the age of eighteen years when such drug is proven to be the proximate cause of the death of the user.
Premeditated A premeditated design to kill Design is a fully-formed conscious purpose to take human life, formed upon reflection and present in the mind at the time of the killing. The law does not fix the exact period of time which must pass between the formation of the intent to kill and the carrying out of the intent. It may be only a short time and yet make the killing premeditated, if the fixed intent to kill was formed long enough before the actual killing to permit of some reflection on the part of the person forming it, and that person was at the time of carrying out that intent fully conscious of a settled and fixed purpose to kill and of the results which would follow such killing. When such state of mind exists there is a premeditated design to kill, although the killing follows closely upon the formation of the intent.
Proof The question of premeditated design is a question of fact to be determined by the jury from the evidence like every other material fact in the case. The law does not require that a premeditated design be proved only by direct and positive testimony. The existence of a premeditated design as well as its formation are operations of the mind, as to which direct and positive testimony cannot always be obtained; therefore, the law recognizes that it may be proved by circumstantial evidence. It will be sufficient proof of such premeditated design if the circumstances attending the homicide and the conduct of the accused convince you beyond a reasonable doubt of the existence of such premeditated design at the time of the homicide.
If a person has a premeditated design to kill one person and in attempting to kill that person actually kills another whom he did not intend to kill, he is nonetheless guilty of murder in the first degree.
The killing of a human being when committed by a person engaged in the perpetration of (or in the attempt to perpetrate) any arson, involuntary sexual battery, burglary, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb, or which resulted from the unlawful distribution of heroin by a person over the age of eighteen years when such drug is proven to be the proximate cause of death of the user, is murder in the first degree even though there is no premeditated design or intent to kill. In Committing Other Crime
The crime of (name crime applicable to evidence! is defined as follows: (define other felonvl.
If a person kills another in trying to do or commit any (arson) (involuntary sexual battery) (robbery) (burglary) (kidnapping) (aircraft piracy) (unlawful throwing, placing or discharging of a destructive device or bomb), or while escaping from the immediate scene of such crime, the killing is in perpetration of or in the attempt to perpetrate such crime.”
Commenting upon a deviation from the standard jury instructions, our Supreme Court in State v. Bryan, 287 So.2d 73 (Fla. 1973), said:
*1140 “By this Court’s approval of the jury instructions for publication, it was not intended that they be iron clad, because we recognized the importance of the trial judge on the scene who has the ‘feel’ of the case, the psychology of its movement through trial and what aspects appear from subtle inflections and overtones to be important in the jury’s mind and for its decision. That is one of the reasons that a trial court’s decision has historically had the presumption of correctness on appeal. These are matters, as we have repeatedly said, that are not apparent from the ‘cold record’. What is important is that sufficient instructions — not necessarily academically perfect ones — be given as adequate guidance to enable a jury to arrive at a verdict based upon the law as applied to the evidence before them. The evidence presented in particular cases will, of course, often vary what instructions apply, or whether certain instructions apply.”
Thus, it is necessary to examine what instructions the jury in this case did receive.
At the outset, the court read the charge against the defendant in the language of the statute. Section 782.04(l)(a), Florida Statutes (1973). The other standard jury instructions applicable to homicide, including those relating to unlawful homicide, justifiable homicide, excusable homicide, second degree murder, third degree murder and manslaughter were generally followed. Likewise, the summary set forth on page 73 of the standard jury instructions was read which included the following definition of first degree murder:
“If the defendant, in killing the deceased, acted from a premeditated design to effect the death of the deceased (some other human being) (in the perpetration of or in an attempt to perpetrate an arson, involuntary sexual battery, robbery, burglary, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb, or as a result of the unlawful distribution of heroin by a person over the age of eighteen years when such drug is proven to be the proximate cause of the death of the user), he should be found guilty of murder in the first degree.”
Other jury instructions which are customarily appropriate in any criminal case were also given.
Since the definition of first degree murder contained in the statute and in the summary is essentially the same as the definition of that crime set forth on page 68 and since there was no evidence that this defendant mistakenly killed the wrong person or committed the killing in the course of committing another crime, it becomes evident that the only relevant matters left out were the paragraph under first degree murder topically designated as Premeditated Design and the first paragraph under the title of Proof. In essence, both of these paragraphs deal with what constitutes premeditated design for purposes of first degree murder.
In affirming a conviction for first degree murder in McDonald v. State, 55 Fla. 134, 46 So. 176 (1908), the Supreme Court said:
“In a criminal prosecution, where a premeditated design is an essential element of the offense, it is not, ordinarily, in the absence of a proper request, incumbent upon the court to give to the jury a definition of the phrase ‘a premeditated design.’ It is presumed that the jury understand the meaning of ‘a premeditated design.’ . .”
Many years later this court in Polk v. State, 179 So.2d 236 (Fla.2d DCA 1965), held that the failure to give the defendant’s requested instruction which defined premeditated design in a first degree murder case was reversible error. Conceding that the term “premeditated design” was not a term of art, the court nevertheless distinguished McDonald because in that case no instruction had been requested.
The Bryan case referred to above was a first degree murder prosecution which resulted in a second degree murder conviction. Even though no instruction had been requested, the First District Court of Ap *1141 peal held that it was fundamental error to fail to explain to the jury the meaning of the words “evincing a depraved mind” as set forth in the standard jury instructions defining second degree murder. Bryan v. State, 271 So.2d 197 (Fla. 1st DCA 1972). However, upon certification to the Supreme Court, this decision was reversed. State v. Bryan, supra. The Supreme Court reasoned that the average juror could understand what a depraved mind was and held that it was not fundamental error to fail to give an instruction which defined this term.
We believe the words premeditated design fall in the same category. We do the average juror an injustice to suggest that he does not understand what it means. Both counsel obviously thought that the jury understood the term because they both labored it in closing argument. Moreover, a careful reading of the language of the omitted paragraphs reflects that the discussion of premeditation tends to favor the state rather than the defendant. If anything, the omission of these paragraphs was more likely to have benefited the defendant.
We do not suggest that these paragraphs should not have been read. We simply hold that in the absence of a request to give the instruction or other appropriate objection, the failure to do so does not constitute reversible error.
AFFIRMED.
BOARDMAN, Acting C. J., and SCHEB, J., concur.