394 So.2d 544 (1981)
Frank John MARASA, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 79-1052/T4-544.
District Court of Appeal of Florida, Fifth District.
February 25, 1981.
Richard D. Nichols of Dorsey, Arnold & Nichols, Jacksonville, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, for appellee.
DAUKSCH, Chief Judge.
This is an appeal from a conviction of murder in the second degree. The principal *545 question on appeal is whether the evidence was legally sufficient to support the conviction. We find it was not.
The facts from the trial reveal that appellant and others were having a drug and liquor party in the early morning hours. Among the people there was the victim of the homicide who, after returning from getting a drink of water, stumbled and sat down on a couch near appellant. After the victim had stumbled someone said "Hit her. She probably won't feel anything," apparently according to the fact that she was "stoned or high"  under the influence of the drugs or liquor. Meanwhile, appellant had been showing a new gun after, he apparently thought, emptying the cylinder of all cartridges. When the victim sat down on the couch, the gun discharged and she was killed. The witnesses to the shooting all agreed it was an accident, not intentional, and the witnesses testified that the appellant made a statement like "I have a better idea" when someone said "hit her, she probably won't feel anything." The pistol was pointed at or in the general direction of the victim and it fired, killing her. Just after the gun went off, appellant was shocked, emotionally upset and began crying.
The most difficult task for us to perform is to fit these facts into a legal category. In reviewing the case, we begin with the presumption of correctness which accompanies the verdict and the conviction. Both the jury and the trial judge sit in a better position than we to weigh evidence and consider witness testimony so we are most cautious in our review of factual matters. Songer v. State, 322 So.2d 481 (Fla. 1975), vacated on other grounds 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977); Keith v. Amrep Corporation, 312 So.2d 234 (Fla. 1st DCA 1975). See Vanzant v. Davies, 215 So.2d 504 (Fla. 1st DCA 1968), cert. den., 225 So.2d 529 (1969). However, there is a legal difference between the degrees of homicide and if the facts do not support a conviction it is our duty to either reduce the conviction to its proper degree or discharge the accused. In this case the evidence is sufficient to convict the appellant of manslaughter but insufficient to support the judgment for murder in the second degree.
Murder in the second degree is the killing of a human being by the perpetration of an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without a premeditated design to effect the death of any particular individual. Sec. 782.04(2), Fla. Stat. (1979). An act is one imminently dangerous to another and evincing a depraved mind if it is an act which (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, (2) is done from ill will, hatred, spite, or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life. Fla.Std.Jury Instr. (Crim.).
Manslaughter is the killing of a human being by the act, procurement, or culpable negligence of another without lawful justification. Sec. 782.07, Fla. Stat. (1979). Culpable negligence is consciously doing an act or following a course of conduct which any reasonable person would know would likely result in death or great bodily injury to some other person, even though done without the intent to injure any person but with utter disregard for the safety of another. Fla.Std.Jury Instr. (Crim.).
So it can be seen, the primary distinction between the two crimes is that manslaughter is committed when one kills as a result of his culpable negligence and it is murder in the second degree when one kills while perpetrating an act imminently dangerous to another and evincing a depraved mind regardless of human life. We must look at the actions of the killer to make a decision as to which crime was committed. Sometimes the difference between the two may be very subtle yet legally distinguishable. Some earlier cases guide us in making our decision.
In State v. Bryan, 287 So.2d 73 (Fla. 1973), the supreme court held that the intentional and forceful striking of another in anger *546 with a loaded pistol which results in the discharge of that weapon, killing the victim, is second degree murder. The act of the defendant fell within the second degree murder conviction as "perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life." Id. at 76.
Mahone v. State, 222 So.2d 769 (Fla.3d DCA 1969), is another example of an action evincing a depraved mind regardless of human life. The appellant had been separated from his wife for two years when he went to her home as he had heard some of their five children were sick. He found his wife in the house with William Marche. A quarrel broke out between Marche and the appellant. After the appellant chased Marche from the house into the yard, Marche threw a whiskey bottle at appellant, who was standing in the doorway. The appellant went into the yard, chased the deceased, caught him, and stabbed him thirteen times.
In contrast are the cases involving the culpable negligence standard of the manslaughter statute. These cases are those in which the shooting was accidental, but the act fits within culpable negligence. In Williams v. State, 336 So.2d 1261 (Fla. 1st DCA 1976), there had been a bar fracas in which the appellant had been involved. During a lull in the fighting, a vehicle in which the victim was riding arrived at the bar. When the driver of the vehicle pulled a shotgun out of his trunk, the appellant took his shotgun out of his truck. Although the appellant had his gun pointed toward the ground, as he shifted his grasp, the shotgun discharged killing the victim. His conviction for manslaughter was affirmed.
The court in McBride v. State, 191 So.2d 70 (Fla. 1st DCA 1966), upheld a conviction for manslaughter on the following facts. The defendant, while voluntarily intoxicated, had on his person a deadly weapon which he brandished in a careless and reckless manner. Even though he may have had no intention of killing the decedent, the court said these acts set the stage for the tragedy and therefore affirmed his conviction.
In considering the facts of this case in conjunction with the Florida Standard Jury Instruction and the statute applicable to second degree murder, we are bound to find the facts are legally insufficient to support the conviction in one very important, if not determinative, aspect. There is absolutely no evidence the appellant's actions were "done from ill will, hatred, spite, or an evil intent." The standard jury instruction requires this proof and past case law supports this conclusion. Manuel v. State, 344 So.2d 1317 (Fla. 2d DCA 1977); Moore v. State, 298 So.2d 561 (Fla. 1st DCA 1974); Raneri v. State, 255 So.2d 291 (Fla. 1st DCA 1971); Luke v. State, 204 So.2d 359 (Fla. 4th DCA 1967), cert. denied, 393 U.S. 932, 89 S.Ct. 290, 21 L.Ed.2d 269 (1968).
Both manslaughter and second degree murder can be defined generally as homicides resulting from the criminal actions of the accused who had no premeditated design to kill. Each of these crimes are committed when an unintended death occurs as a result of an act of the killer. It is the nature of the particular actions and the circumstances surrounding those actions of the accused which courts must examine to determine what classification of homicide is proper.
If the accused, through ill will, hatred, spite or with an evil intent, commits an act a person of ordinary judgment would know is reasonably certain to kill or seriously injure and that act exhibits an indifference to human life, then murder in the second degree applies.
However, if the act does not fit within the above definition but is an act utterly regardless of the safety of another and done in such a manner any reasonable person would know would result in death or serious injury, then the acts are deemed culpable negligence and are punishable as manslaughter.
There is no question the death in this case occurred from a senseless, apparently uncaring, reckless act by a person held in low repute in general society, a member of a *547 motorcycle gang, at a "party" which featured drugs and alcohol and in an atmosphere which would naturally and properly disgust good people. This court cannot even approach condonation of the behavior and lawless lifestyle of the participants in this tragic episode but this court is bound to enforce the law for the benefit, and detriment when required, of all persons.
The appellant would have us reverse the conviction because he says the facts of this case fall within the facts of Parker v. State, 318 So.2d 502 (Fla. 1st DCA 1975). In that case, Parker and the decedent were riding in a truck; the decedent was driving and Parker half-cocked a pistol and waved it by the victim's head when it fired. All the evidence revealed there was no animosity between the two men; they were cousins and friends. Parker was convicted of manslaughter and the appellate court reversed the conviction. However, in that case it was critical to the decision that Parker did not "indiscriminately" fire the gun and there was some indication the gun was a faulty one. Here, the appellant thought he had unloaded the gun, but he had not, he pulled the trigger purposely, apparently, and the gun was pointed at the victim when he pulled the trigger. The fact that he did not intend to kill or injure does not relieve him of his criminal responsibility so we affirm a conviction. But we cannot affirm a conviction of murder in the second degree because the evidence simply does not support that conclusion any more than the evidence would support a murder in the first degree conviction based upon premeditated design. When the legislature assigned degrees to homicide, it was intended various criminally caused deaths would be punished in the various degrees. In order to warrant the second degree punishment, the state must prove a second degree case. It failed to do so here. The judgment is reversed and this cause remanded for entry of a judgment for manslaughter and resentencing. Sec. 924.34, Fla. Stat. (1979).
REVERSED AND REMANDED.
FRANK D. UPCHURCH, Jr., J., concurs.
COBB, J., dissents with opinion.
COBB, Judge, dissenting.
The state presented evidence at trial which, if believed by the jury, established the following case in support of a conviction of second degree murder: The defendant opened a pistol to allow cartridges to drop out; then, without visually or manually checking to see if the cylinder was empty, he deliberately pointed the pistol at the victim to frighten her and pulled the trigger, discharging the pistol and resulting in her death. This was immediately preceded by his statement that he had a "better idea" than hitting her. In effect, Marasa was playing Russian roulette with the life of Cynthia Fishback  and she lost. His subsequent contrition does not alter the nature of the act. There was sufficient evidence for the jury to find that the defendant perpetrated an act eminently dangerous to another, evincing a depraved mind regardless of human life.
The case of Hines v. State, 227 So.2d 334 (Fla. 1st DCA 1969) is factually similar. In that case the defendant, as here, was at a jovial drinking party. He took a shotgun, loaded it to "shoot some squirrels," and told the victim to "act like a squirrel," at which point the gun went off and killed her. In that case, there was no admission that the defendant deliberately pointed the gun at the victim and deliberately pulled the trigger, as there is here. The First District held these facts sufficient to constitute murder in the second degree. That court stated:
Since the jury accepted the State's witness's version of the shooting, so must we, unless it was clearly not in accord with logic and reason. The act of the defendant in pointing the gun at the deceased and at the same time making the remarks which he made was, even though joking, evidence of a corrupt disregard for human life. Even if we accept the defendant's statement that the gun fired upon closing the breach, which would be construing the circumstances most favorable to the defendant, such action committed *548 while a gun is purposely pointed at the head of another from a very short distance certainly implies malice of the type present when death is caused by recklessness, even though a willful design is absent. 40 Am.Jur.2d, Homicide, Section 53. (Emphasis added).
227 So.2d at 336.
In State v. Bryan, 287 So.2d 73 (Fla. 1974), cert. denied, Bryan v. Florida, 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974), the Florida Supreme Court upheld a second degree murder conviction based on the intentional striking of the victim with a loaded pistol, resulting in its accidental discharge, in the absence of any deliberate act of pointing the pistol or intentional pulling of the trigger.
Williams v. State, 336 So.2d 1261 (Fla. 1st DCA 1976), cited by the majority, was significantly different from the facts before this court. In that case, a shotgun which the defendant was shifting from one arm to the other accidentally discharged, killing an unintended victim toward whom the defendant had evinced no evil intent (threat, harassment, or malice) as found in Bryan, Hines, and in the instant case. In McBride v. State, 191 So.2d 70 (Fla. 1st DCA 1966), also cited by the majority, the crime of second degree murder was not discussed. A manslaughter conviction, based on the careless discharge of a firearm, was affirmed. There was no indication in that case of any malicious remark or any deliberate pointing of a gun and pulling the trigger.
I would affirm the conviction for murder in the second degree.