495 So.2d 197 (1986)
David Edward DELLINGER, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1349.
District Court of Appeal of Florida, Fifth District.
August 21, 1986.
On Motion for Rehearing October 2, 1986.
*198 James B. Gibson, Public Defender and Michael L. O'Neill, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for appellee.
EN BANC
SHARP, Judge.
Dellinger appeals from his conviction and sentence for second degree murder[1] on the ground that the evidence presented at trial was insufficient to support the jury's verdict. Because of a potential conflict with Marasa v. State, 394 So.2d 544 (Fla. 5th DCA), review denied, 402 So.2d 613 (Fla. 1981), we considered this case en banc,[2] and we affirm. To the extent the result in Marasa conflicts with the result in this case, we recede from Marasa.
The record in this case presented little factual conflict as to the circumstances of the victim's death. Dellinger was then twenty-two years old, and he had no previous juvenile or adult record. He and his wife were in their bedroom with their door closed. The couple with whom they shared their apartment testified they heard Dellinger and his wife arguing, although not their exact words. The victim had a suitcase on her bed, and was in the process of putting some clothes into it.
Dellinger testified he picked up a rifle and pointed it in the direction of his wife. He said he meant to get her attention and scare her. He did not think the rifle was loaded, but he did not check to see whether it was loaded or not. Dellinger stated to his wife that he could shoot her, and he pressed the trigger. Apparently, his wife was not frightened because she did not turn around to look at him, and was still arguing with him when she was struck by the bullet.
Appellant exclaimed "Oh, my God," and carried his wife out of the bedroom. He was shocked and distraught, and stated he accidentally shot his wife. He assisted in taking the victim to the hospital where she died the following day.
Second degree murder requires a jury to find "the unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premediated design to effect the death."[3] There may be, as in this case, little express testimony concerning a defendant's malice or depraved state of mind. However, we think the jury could have inferred this necessary element of second degree murder from the evidence in this case. Here Dellinger pointed a rifle at his wife without knowing (and thus without caring) whether or not it was loaded, and then deliberately pulled the trigger, killing *199 her. We think those facts permitted the jury to infer Dellinger had a "depraved mind regardless of human life" when he fired the rifle.
AFFIRMED.
ORFINGER and COWART, JJ., concur.
COBB, J., concurs and concurs specially, with opinion in which COWART, J., also concurs.
DAUKSCH, J., concurs in part and dissents in part, with opinion in which UPCHURCH, C.J., concurs.
COBB, Judge, concurring specially:
I concur with Judge Sharp's majority opinion and write in response to the dissent. The conflict between our result here and the majority opinion in Marasa is that in Marasa we usurped the function of the finder of fact, which was entitled to infer "ill will, hatred, spite or an evil intent" on the part of the defendant from the facts immediately preceding the shooting of the victim. Those facts, distinctly analogous to the instant facts, are set forth in the dissent in Marasa. That analogy necessitates this en banc opinion. It was not the legal definitions set forth in Marasa that created a problem; it was the appellate intrusion into the factual province of the jury. Marasa was an aberration at odds with other Florida case law[1] in this area, and the fundamental concept that factual disputes and inferences are matters for jury resolution.
COWART, J., concurs.
DAUKSCH, Judge, concurring in part and dissenting in part:
I respectfully dissent in part.
First, I do not agree the facts in this case are such that a conflict between this case and Marasa exists. In Marasa, it was clear there was no arguing or strife or anything approaching the requisite "ill will, hatred, spite, or an evil intent." Florida Standard Jury Instructions (Crim.) Here, there was arguing between the parties before the killing and the decedent was packing her bags to leave appellant. Appellant specifically declared that he could kill her and did so. Facts so strong simply do not exist in Marasa.
Secondly, by our receding "to the extent the result in Marasa conflicts" absolutely nothing is accomplished. Marasa stands for the proposition that the state must prove what the supreme court requires it to prove in the standard jury instruction covering second degree murder.
MURDER  SECOND DEGREE
F.S. 782.04(2)
Before you can find the defendant guilty of Second Degree Murder, the State must prove the following three elements beyond a reasonable doubt:
Elements 1. (Victim) is dead.
2. The death was caused by the criminal act or agency of (defendant).
3. There was an unlawful killing of (victim) by an act imminently dangerous to another and evincing a depraved mind regardless of human life.
Definition An act is one "imminently dangerous to another and evincing a depraved mind regardless of human life" if it is an act or series of acts that:
1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and
2. is done from ill will, hatred, spite or an evil intent, and
3. is of such a nature that the act itself indicates an indifference to human life.
In order to convict of Second Degree Murder, it is not necessary for the State to prove the defendant had a premeditated intent to cause death. (emphasis supplied)
Nothing said in the majority opinion conflicts with what is said in Marasa. But if this court now determines a better definition *200 of second degree murder is warranted, then do it. Define it. Apply the definition to the facts here, distinguish them from Marasa and then, and only then, recede. Can it be logically said that the majority opinion here clears up anything for the trial courts and practicing lawyers and juries? I suggest not.
Lastly, I should suggest the majority would do right by certifying a question to the supreme court, viz: must the state prove ill will, hatred, spite or evil intent in a second degree murder case?
It is my opinion the state must so prove and it failed to do so in Marasa. I think the state did not fail in its proof here and would affirm the conviction and not write an opinion receding from whatever there is in the majority opinion in this case which is in conflict with what is said in Marasa.
UPCHURCH, C.J., concurs.

ON MOTION FOR REHEARING
We grant appellant's motion for rehearing or clarification in order to correct a misstatement of fact. In our en banc opinion, we said appellant testified he told his wife that he "could kill" her. The record shows he testified he said he "could shoot" her, while pointing the rifle in her direction. We hereby correct our prior opinion by replacing the verb "kill" with "shoot." Otherwise, the opinion is unchanged; and appellant's sentence and conviction are affirmed.
UPCHURCH, C.J., DAUKSCH, ORFINGER, COBB and COWART, JJ., concur.
NOTES
[1] § 782.04, Fla. Stat. (1984).
[2] Fla.R.App.P. 9.331.
[3] § 782.04(2), Fla. Stat. (1984).
[1] See, e.g., State v. Bryan, 287 So.2d 73 (Fla. 1973), cert. denied, Bryan v. State, 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974); Hines v. State, 227 So.2d 334 (Fla. 1st DCA 1969).