971 So.2d 846 (2007)
Abdel BERDECIA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-229.
District Court of Appeal of Florida, Third District.
October 24, 2007.
Rehearing Denied December 12, 2007.
*847 Robbins, Tunkey, Ross, Amsel, Raben & Waxman, and Benjamin Waxman, Miami, for appellant.
Bill McCollum, Attorney General, and Angel L. Fleming, Assistant Attorney General, for appellee.
Before COPE, RAMIREZ and SALTER, JJ.
RAMIREZ, J.
Abdel Berdecia appeals his judgment of conviction for manslaughter and aggravated battery and his sentence to thirteen years' imprisonment, followed by five years' probation. We affirm the aggravated battery conviction but reverse the manslaughter conviction.
On August 16, 2002, Daniel Alvarez, one of the victims, went out to a Miami Beach club with a group of friends, including Kristin Del Cueto. Unbeknownst to the group, Del Cueto's boyfriend or ex-boyfriend, Reynyer Aguilera, tried to follow Del Cueto to the club because he thought Del Cueto was cheating on him. Aguilera was with his friend, Humair Jawaid, in Jawaid's car so Del Cueto could not detect Aguilera. While following the group, Jawaid's car had a flat tire and they lost track of the car that Alvarez, Del Cueto and their friends were riding in.
After fixing the flat tire, Aguilera called Berdecia and asked him to meet at Aguilera's father's house so he could continue looking for Del Cueto. Berdecia agreed, and along with Benito Mendez, drove to Aguilera's father's house. The four men then got into Jawaid's white Mazda and drove to the home of Melissa Diaz, one of the females in the group who had gone to the Miami Beach night club. Berdecia had his Glock nine millimeter weapon with him that night. He had a license to carry a concealed firearm and usually carried his gun with him in a holster. Aguilera was aware of this.
The four men waited for Del Cueto to get back from the night club. A little after 4 a.m., Alvarez, Del Cueto and their friends arrived at Diaz's house. Alvarez got out of the car and said goodbye to Del Cueto. At that point, Aguilera, Berdecia and the other two men exited their car. Berdecia and Aguilera then attacked Alvarez and his friend, Ignacio Ramirez. At *848 some point, Aguilera grabbed the gun from Berdecia's holster. Aguilera beat Alvarez with the gun. Alvarez tried to get away and ran to the front door of the house. Ramirez was standing there. Alvarez told Ramirez to get inside the house, but the door was locked. Aguilera approached Ramirez and pointed the gun at him. Berdecia approached Alvarez and began hitting him with an asp, which is a steel baton. Alvarez stepped back and bumped into the front door. He then looked over and saw Aguilera step forward, point the gun and shoot Ramirez in the head, who then fell down. Ramirez died as a result of the gunshot wound. The four assailants ran back to the white Mazda, jumped in and fled. Berdecia retrieved his gun from Aguilera and unloaded it. They stopped about a block away, and Aguilera got out of the car. The other three men drove back to Aguilera's father's house. Jawaid drove away in his white Mazda, and Berdecia and Mendez drove back to the scene of the crime in Berdecia's black Nissan.
After 911 was called and the police arrived, Aguilera immediately stated that he was the one who shot Ramirez. Aguilera was then arrested. A few minutes later, Berdecia and Mendez drove up. They told the officer that was there that they were witnesses to the shooting. Berdecia told the officer he had the gun in the center console of his car. The officer removed the gun. Other officers arrived and took Berdecia and the other man into custody.
The State charged codefendants Berdecia and Aguilera by information with second-degree murder with a firearm, aggravated battery with a deadly weapon, and use or display of a firearm while committing a felony. A third codefendant, Jawaid, was charged with being an accessory after the fact.
Berdecia and Aguilera were tried together before the same jury. After the State presented its case against both defendants and rested, Aguilera's counsel moved for judgment of acquittal on the second-degree murder charge, which the trial court denied. Berdecia's counsel also moved for judgment of acquittal. The trial court granted a judgment of acquittal as to the possession of a firearm during the commission of a felony charge, but denied the motion on the remaining three charges against Berdecia. Neither defendant testified nor presented any witnesses.
The jury found Aguilera guilty of second-degree murder as charged, guilty of aggravated battery with a firearm, guilty of use or display of a firearm while committing a felony, and not guilty of aggravated battery with a baton. The jury found Berdecia guilty of manslaughter as a lesser included offense, guilty of aggravated battery with a baton, and not guilty of aggravated battery with a firearm.
Berdecia's first point on appeal is that the evidence was legally insufficient to support the conviction for manslaughter, where the State failed to establish that his acts rose to the level of culpable negligence or constituted the legal cause of the victim's death. We disagree and find that the evidence was sufficient to support the manslaughter verdict.
Florida courts have consistently held that a motion for judgment of acquittal should not be granted "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Morrison v. State, 818 So.2d 432, 451 (Fla. 2002). Moreover, courts in Florida will find that there is sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime *849 beyond a reasonable doubt. Pagan v. State, 830 So.2d 792, 803 (Fla.2002) ("If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.").
The State argues that Berdecia did not preserve this issue for appeal because he never presented this specific argument to the trial court. However, even were we to accept Berdecia's contention that this alleged error constituted fundamental error, we would find still that there was legally sufficient evidence in the record upon which to find Berdecia guilty of manslaughter as a lesser included offense.
Manslaughter is defined under section 782.07(1), Florida Statutes (2001), as:
The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree. . . .
Thus, the elements of manslaughter by culpable negligence require the State to prove the killing of a human being by an act of culpable negligence without lawful justification. § 782.07(1), Fla. Stat. (2001).
Here, the record supports that Berdecia actively participated in the crimes. The evidence showed that Berdecia, Aguilera and the two other men hid across the street from Diaz's home for over two hours, waiting for the victims to get back from the night club, knowing that they were trying to catch Aguilera's girlfriend cheating on him. Berdecia admitted that he personally beat Alvarez with his steel baton. He further admitted that he brought the loaded, cocked gun used in the murder, and discussed the gun with the men in the car before the attack. Moreover, he did nothing when Aguilera took the gun from Berdecia's holster and began using it.
Along with Aguilera, Berdecia chased the two unarmed victims to the door of the house. Berdecia helped Aguilera corner the two men so that as he beat Alvarez with the baton, Aguilera was able to pistol whip and kill Ramirez. Consequently, Berdecia was charged with second-degree murder, but was convicted of the lesser crime of manslaughter.[1] Clearly, as the State correctly points out, what occurred here is that the jury effectively pardoned Berdecia on the second-degree murder charge and convicted him of manslaughter as a lesser included offense, because they believed him to be less culpable than Aguilera, who was the actual shooter. As such, there was sufficient evidence to sustain Berdecia's conviction for manslaughter and aggravated battery with a baton.
Berdecia next contends that the trial court committed fundamental error in instructing the jury, with regard to each charged offense and all the lesser offenses, that it must find Berdecia guilty based Berdecia's acts "and/or" Aguilera's acts. It is clear that the trial court repeatedly instructed the jury that it could find Berdecia guilty based on his own acts "and/or" the acts of Aguilera. With respect to the manslaughter charge, the court instructed the jury that it could find Berdecia guilty if either he "and/or" Aguilera *850 intentionally caused or procured Ramirez's death, or if his "and/or" Aguilera's act of culpable negligence caused Ramirez's death. Regarding the aggravated battery charge, the court instructed the jury that it could find him guilty if either he "and/or" Aguilera intentionally touched Alvarez against his will and did so using a deadly weapon.
Florida courts have held that the use of the conjunction "and/or" between the names of codefendants in jury instructions can result in fundamental error. See Harris v. State, 937 So.2d 211 (Fla. 3d DCA 2006); Dorsett v. McRay, 901 So.2d 225 (Fla. 3d DCA 2005); Davis v. State, 895 So.2d 1195 (Fla. 2d DCA 2005); Concepcion v. State, 857 So.2d 299 (Fla. 5th DCA 2003); Williams v. State, 774 So.2d 841 (Fla. 4th DCA 2000). This is because the use of this conjunction creates a situation in which the "jury may have convicted the [defendant] based solely upon a finding that [the] codefendant's conduct satisfied an element of the offenses." See, e.g., Davis, 895 So.2d at 1196.
Here, the jury instruction that the trial court gave contained the "and/or" connector which allowed the jury to convict Berdecia based solely on Aguilera's actions. We find that the trial court committed fundamental error in giving this instruction with regard to manslaughter. However, we find no fundamental error regarding the aggravated battery charge instruction because the record is clear that the only evidence presented regarding this charge was that Berdecia possessed the baton and that he was the only one that struck Alvarez with it. Thus, this is not a situation where Berdecia could have been convicted for the criminal conduct of Aguilera because Aguilera never had the baton in his possession, nor did he hit or have any physical contact with Alvarez. Accordingly, the trial court did not commit fundamental error in giving the "and/or" jury instruction with regard to the aggravated battery charge.
With respect to our finding that the manslaughter jury instruction given in this case constituted fundamental error, we note the State's contention that Berdecia's counsel affirmatively requested the "and/or" connector of which he now complains. Thus, the State argues, Berdecia cannot raise it on appeal. See Armstrong v. State, 579 So.2d 734 (Fla.1991). Under the circumstances of this case, however, we agree with Berdecia that his trial attorney's request for this instruction basically amounted to ineffective assistance of counsel. Instead of remanding the issue so that Berdecia can file a motion under Florida Rule of Criminal Procedure 3.850, we conclude that the record is sufficient, on its face, for us to resolve this issue on this appeal. See Loren v. State, 601 So.2d 271, 272-73 (Fla. 1st DCA 1992) (although a claim for ineffective assistance of counsel is properly raised in a motion for postconviction relief, claim may be raised on direct review where the record is sufficient to allow determination of the claim); see also Mizell v. State, 716 So.2d 829 (Fla. 3d DCA 1998) (we can avoid having the parties and trial court "do the long way what we ourselves should do the short").
A claim of ineffective assistance of counsel requires a showing that: (1) defense counsel's representation was deficient in that it fell below an objective standard of reasonableness; and (2) there was prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, there can be no question that Berdecia's trial counsel's request for the confusing "and/or" instruction, which trial counsel herself *851 admitted was "a little confusing," was deficient. As previously stated, Florida courts have held that the use of the conjunction "and/or" between the names of codefendants in jury instructions can result in fundamental error. See Harris v. State, 937 So.2d at 213 (Fla. 3d DCA 2006); Dorsett v. McRay, 901 So.2d at 226 (Fla. 3d DCA 2005); Davis v. State, 895 So.2d at 1196 (Fla. 2d DCA 2005); Concepcion v. State, 857 So.2d at 301-02 (Fla. 5th DCA 2003); Williams v. State, 774 So.2d at 843 (Fla. 4th DCA 2000). Here, Berdecia's counsel not only did not object to the "and/or" instruction, she herself requested that it be given.
Turning to the second prong of the Strickland test, the trial court repeatedly instructed the jury that it could find Berdecia guilty based on his own acts "and/or" the acts of Aguilera. With respect to the manslaughter charge, the trial court instructed that jury that it could find Berdecia guilty if either he "and/or" Aguilera intentionally caused or procured Ramirez's death, or if his "and/or" Aguilera's act of culpable negligence caused Ramirez's death. The prejudice here is that as a result of the "and/or" instruction that was given, the jury was allowed to convict Berdecia based solely upon Aguilera's acts and state of mind. Regarding the manslaughter charge, the jury thus was instructed that it could find Berdecia guilty of the offense if it concluded that the State proved beyond a reasonable doubt that Ramirez was dead and that Aguilera caused his death. Thus, even if the jury thought Aguilera was innocent with regard to Ramirez's death, because the evidence clearly established that Aguilera shot Ramirez and Ramirez died as a result of the shot, the "and/or" instruction allowed the jury to convict Berdecia of manslaughter. There is a reasonable probability then that, but for Berdecia's counsel's request for this "and/or" instruction, the jury would not have convicted Berdecia of manslaughter.
In sum, we affirm Berdecia's conviction for aggravated battery and reverse his conviction for manslaughter. We further remand the case for a new trial.
Affirmed in part; reversed in part and remanded for further proceedings.
NOTES
[1] Berdecia's contention that he had no intention to kill Ramirez is irrelevant, because he was charged with second degree murder, which does not require a specific intent to kill. See Hall v. State, 951 So.2d 91, 95-96 (Fla. 2d DCA 2007).