975 So.2d 1270 (2008)
Reynyer AGUILERA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-422.
District Court of Appeal of Florida, Third District.
March 12, 2008.
*1271 Black, Srebnick, Kornspan & Stumpf and Roy Black and Christine M. Ng, Miami, for appellant.
Bill McCollum, Attorney General, and Angel L. Fleming, Assistant Attorney General, for appellee.
Before COPE, GREEN, and SALTER, JJ.
SALTER, J.
Reynyer Aguilera appeals the judgment and sentence following a jury verdict finding him guilty of second-degree murder, aggravated battery, and use of a firearm while committing a felony. Aguilera raises two points here: that an "and/or" jury instruction was fundamental and reversible error in light of the actions of his codefendant,[1] and that there was not legally sufficient evidence to support Aguilera's conviction for second-degree murder (as opposed to manslaughter).
Because we find that Aguilera's own, and substantially undisputed, acts were independent and sufficient to support his conviction, such that none of Berdecia's actions can be said to have tainted or influenced the jury's deliberations even if mistakenly attributed to Aguilera, we affirm.
The Incident
Aguilera, age twenty-two, lived with his girlfriend Kristin, age twenty, and their 22-month-old daughter. Aguilera and Kristin had lived together about three years, and Aguilera considered her to be his wife.
On a Friday night that was to prove tragic, Kristin called Aguilera to tell him that she and her step-sister were going to go out with other young women. Aguilera was upset that she was going out without him. Kristin did not tell Aguilera that two *1272 young men, Danny and Ignacio, would be accompanying the group to a Miami Beach night club. Aguilera was suspicious, and he and a friend followed the group in the friend's car until that car had a flat tire.
After repairing the tire, Aguilera called another friend, codefendant Abdel Berdecia, to meet him at Aguilera's father's house so that they could try to find Kristin and her group. Ultimately, Aguilera, Berdecia, and two other men drove to the home of one of the young women with Kristin, Melissa, to wait for them. They arrived at the house at about 2:00 a.m. and waited in a car.
Berdecia had a concealed weapons permit, and that night he had his loaded, holstered handgun with him. Aguilera knew that Berdecia usually carried a handgun and that he had a permit to do so. When Berdecia got in the car that night, Aguilera saw that he had the gun with him. Aguilera asked Berdecia to let him hold the gun, but Berdecia refused to let him take it. Aguilera wanted to hold the gun "for protection from the guys" accompanying Kristin and the other women, "in case of anything."[2]
Kristin, the two other women, the victim (Ignacio), and the other young man (Danny) in the group arrived at Melissa's home some time after 4:00 a.m. Danny gave Kristin a kiss on the cheek as the group got out of the car. Aguilera saw this, grabbed the gun from Berdecia, and rushed with Berdecia and their two other friends toward Kristin and her group. Aguilera first tried to hit Danny with the gun, but that strike did not draw blood. Danny and Ignacio then ran to the front foyer of Melissa's house and banged on the locked door.
Berdecia had with him an asp  an extendable baton  and began to use it to strike Danny, while Aguilera hit Ignacio with the gun. The gun discharged, firing a single round into the side of Ignacio's head, and he later died from that wound.[3]
After the gunshot, Aguilera and his group initially left the scene in their car. Aguilera returned to the scene almost immediately, however, without the gun, and told the police that he had been the shooter. He told the police that he had tried to hit Ignacio with the gun, and that the gun had gone off accidentally.
"And/Or"
Berdecia and Aguilera were charged with second-degree murder with a firearm, aggravated battery with a deadly weapon, and use of a firearm during the commission of a felony. They were tried on these charges together. Neither codefendant testified or presented any witnesses.
Several jury instructions requested by Berdecia's counsel (and approved without objection by Aguilera's counsel) included "and/or" to link the two codefendants as actors. As we observed in reversing Berdecia's conviction on the manslaughter charge (but not on the aggravated battery charge):
Florida courts have held that the use of the conjunction "and/or" between the names of the codefendants in jury instructions can result in fundamental error. See Harris v. State, 937 So.2d 211 (Fla. 3d DCA 2006); Dorsett v. McRay, *1273 901 So.2d 225 (Fla. 3d DCA 2005); Davis v. State, 895 So.2d 1195 (Fla. 2d DCA 2005); Concepcion v. State, 857 So.2d 299 (Fla. 5th DCA 2003); Williams v. State, 774 So.2d 841 (Fla. 4th DCA 2000). This is because the use of this conjunction creates a situation in which the "jury may have convicted the [defendant] based solely upon a finding that [the] codefendant's conduct satisfied an element of the offenses." See, e.g., Davis, 895 So.2d at 1196.
Berdecia, 971 So.2d at 850.
We have previously held, however, that such an instruction can be harmless error when one codefendant is convicted of actions that could not have been based on the actions of the other. Lloyd v. Crosby, 917 So.2d 988 (Fla. 3d DCA 2005). See also Green v. State, 968 So.2d 86 (Fla. 2d DCA 2007). The error in an "and/or" instruction is not subject to any automatic or per se rule requiring reversal as to all codefendants. Rather, a reviewing court is to consider the totality of the circumstances and to determine whether the acts of one codefendant, if erroneously attributed to another as a result of the erroneous instruction, may have reversibly infected the jury verdict.
Error Fundamental as to Berdecia, Harmless as to Aguilera?
The issue presented, then, is whether any of Berdecia's actions, if erroneously attributed by the jury to Aguilera, might have contributed to a guilty verdict on the charges of second-degree murder, aggravated battery, and use of a firearm during the commission of a felony. In Berdecia's case, we found that Aguilera's use of the firearm and the discharge of that firearm, when attributed to Berdecia via the "and/or" instruction, irreparably tainted Berdecia's conviction. Berdecia did not hold or use the gun during the attack at the front of the home, and he was sufficiently removed from the occurrences between Aguilera and the victim that the instruction was clearly harmful regarding the manslaughter charge against Berdecia.
Not so, however, in the second-degree murder charge against Aguilera and the assumed attribution by the jury of any action by Berdecia to Aguilera. Aguilera argues that the State obtained the verdict by arguing to the jury during closing, that "we probably wouldn't be here" but for Berdecia's action in bringing the gun with him, and that "everyone knows you don't bring a gun and you don't bring a deadly weapon to a fist fight."
The fact that Berdecia brought the gun, if attributed to Aguilera, does not establish an element in the second-degree murder case against Aguilera that was not already indisputably established by Aguilera himself. Second-degree murder does not rise or fall on premeditation  rather, the State was required to prove that Aguilera killed the victim by an act "imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual."[4] A "depraved mind" is interpreted to mean "ill will, hatred, spite, or evil intent." Turner v. State, 298 So.2d 559, 560 (Fla. 3d DCA 1974).
Berdecia brought the gun as Aguilera and other friends assembled over two hours before the shooting, but he never used it. Berdecia never attacked the shooting victim, Ignacio, with the asp. He did not have a relationship with Kristin that might make him jealous or angry.
Aguilera admitted that he was suspicious, angry, and jealous. He took the gun *1274 from Berdecia. Over two hours earlier, Berdecia had refused to hand over the gun to Aguilera. Only Aguilera attacked the victim and the other young man with a firearm. On these facts, Berdecia's actions did not prove the elements of the charges against Aguilera, even though Aguilera's actions can be said to have strengthened the "and/or" case against Berdecia. Here, as in Lloyd v. Crosby, 917 So.2d 988 (Fla. 3d DCA 2005), the flawed "and/or" instruction was harmless error as to one of the two codefendants  in this case, as to Aguilera.
Second-Degree Murder Versus Manslaughter
The Florida Supreme Court has held that the intentional and forceful striking of another person in anger with a loaded pistol,[5] resulting in the discharge of that weapon and death of the victim, "seems rather plainly" to satisfy the elements of the second-degree murder statute. State v. Bryan, 287 So.2d 73, 76 (Fla.1973). We agree, and we decline to regard that holding as mere dicta (as argued by Aguilera).
Conclusion
The confusion created by "and/or" in all areas of the law  contracts, criminal law, and otherwise  is certainly not a recent development or a contagion confined to Florida. Over 70 years ago, an obviously annoyed Justice of the Supreme Court of Wisconsin wrote:
[W]e are confronted with the task of first construing "and/or," that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase, the child of a brain of someone too lazy or too dull to express his precise meaning, or too dull to know what he did mean, now commonly used by lawyers in drafting legal documents, through carelessness or ignorance or as a cunning device to conceal rather than express meaning with view to furthering the interest of their clients. We have even observed the "thing" in statutes, in the opinion of courts, and in statements in briefs of counsel, some learned and some not.
Employers' Mut. Ins. Co. v. Tollefsen, 219 Wis. 434, 263 N.W. 376, 377 (1935).
There is a superficial inconsistency in determining that a flawed jury "and/or" instruction was harmful and fundamental error as to one codefendant, Berdecia, but harmless as to the other, Aguilera. We are convinced, however, that in this unusual case, the excision of the evidence relating to Berdecia and Berdecia's acts would not have affected the jury's verdict against Aguilera  the uncontroverted and remaining evidence of guilt was simply overwhelming.
On Aguilera's second point, we find that the State proved, and the jury properly found, the essential elements that distinguish second-degree murder from manslaughter: Aguilera's "ill will, hatred, spite, or evil intent" toward a man Aguilera believed had been at a night club with the woman Aguilera considered his wife, and the obvious danger inherent in selecting a loaded, deadly weapon as the instrument with which to strike the victim.
Affirmed.
NOTES
[1] We recently reversed in part the conviction of that codefendant, Abdel Berdecia, based upon the use of "and/or" in the manslaughter jury instruction and the resulting possibility that Aguilera's actions might be attributed by the jury to Berdecia. In doing so, we determined that the flawed instruction  provided by Berdecia's own counsel  constituted fundamental error as to Berdecia. Berdecia v. State, 971 So.2d 846 (Fla. 3d DCA 2007).
[2] These admissions regarding the handgun were voluntarily given to the police by Aguilera shortly after the shooting; a transcript was read to the jury at trial.
[3] The evidence was conflicting as to whether Aguilera accidentally discharged the firearm while attempting to strike the victim or whether he pointed the gun at the victim and fired. The gun was not in contact with the victim's head when it fired.
[4] § 782.04(2), Fla. Stat. (2005).
[5] This views the conflicting testimony on the discharge of the handgun in the light most favorable to Aguilera.