547 So.2d 1003 (1989)
Stanley B. ELLISON, Appellant,
v.
STATE of Florida, Appellee.
No. 88-3054.
District Court of Appeal of Florida, First District.
August 15, 1989.
*1004 Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert Butterworth, Atty. Gen., and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
*1005 JOANOS, Judge.
The original opinion is withdrawn and the following opinion is substituted therefor.
Ellison has appealed a judgment and sentence for depraved-mind second-degree murder. We reverse, and remand with directions to enter judgment for manslaughter.
In May 1988, a gray Grand Am automobile was stolen from a Jacksonville mall. The following day, a police officer observed a gray Grand Am exceeding the speed limit and clocked the vehicle at 67 M.P.H. in a 35 M.P.H. zone. The officer commenced pursuit, and the car began weaving in and out of traffic at high speed, ramming through a blocked toll booth gate at an estimated speed of 65 M.P.H. The car then jumped the median onto a service road, accelerating to approximately 70 M.P.H. and, already fishtailing, entered a major thoroughfare. As it did so, the driver lost control, crossed the center line and struck another vehicle head on, fatally injuring a 16-month old baby who was a passenger in that vehicle. The baby died the next day, and Ellison was charged with depraved-mind second-degree murder, contrary to Section 782.04(2), Florida Statutes, and grand theft, contrary to Section 812.014(2)(c), Florida Statutes.
Ellison was tried by jury. At the close of the state's case, the defense moved for judgment of acquittal as to the second-degree murder charge. In order to prove that a defendant committed depraved-mind second degree murder, the state must show that the act: 1) was one a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, 2) was committed from ill will, hatred, spite or evil intent, and 3) itself indicated an indifference to human life. Marasa v. State, 394 So.2d 544, 545 (Fla. 5th DCA 1981), accord Law v. State, 502 So.2d 471, 472-73 (Fla. 1st DCA 1987). The defense argued that the state had not proven the second element, that is, that Ellison's act was committed out of any ill will, hatred, spite or evil intent. The trial court disagreed and the case proceeded to the jury, which returned a verdict of second-degree murder and grand theft. The latter conviction is not appealed herein, and is not affected by this opinion.
The case proceeded to sentencing, where a dispute occurred regarding the inclusion of 21 points on the guidelines scoresheet for "legal status at the time of offense." Rule 3.701(d)(6), Florida Rules of Criminal Procedure, provides:
Legal status at time of offense is defined as follows: Offenders on parole, probation, or community control; in custody serving a sentence; escapees; fugitives who have fled to avoid prosecution or who have failed to appear for a criminal judicial proceeding or who have violated conditions of a supersedeas bond; and offenders in pretrial intervention or diversion programs.
At the time of the offense herein, Ellison was on "furlough status" after being committed to the Department of Health and Rehabilitative Services. See § 959.011(3), Fla. Stat. (1987); Fla. Admin. Code Rules 10H-1.003(6) and 10H-9, et seq. The defense contended that, because "furlough status" was not specifically enumerated in Rule 3.701(d)(6), points could not be added in this category. The state countered with unsupported argument that "furlough status" was the equivalent of adult "parole," and that points were therefore awardable. The court adopted the state's argument and allowed the inclusion of 21 additional points, resulting in an increase in the recommended sentencing range from 12-17 years incarceration to 17-22 years incarceration. Ellison was thereupon sentenced to 22 years incarceration for the second-degree murder conviction, and 5 years for grand theft, to run concurrently.
The grade or degree with which a homicidal act was committed is a question of fact dependent upon the circumstances of a case and is typically for resolution by the jury. Larsen v. State, 485 So.2d 1372, 1373 (Fla. 1st DCA 1986); Reimel v. State, 532 So.2d 16 (Fla. 5th DCA 1988). Both manslaughter and second-degree murder can be defined generally as homicides resulting from the criminal actions of an accused *1006 who had no premeditated design to kill. Each crime is committed when an unintended death occurs as a result of an act of the killer. However, there is a legal difference between the two crimes, and if the facts do not support a conviction, it is our duty to either reduce the conviction to its proper degree, or discharge the accused. Marasa, 394 So.2d at 545. There is no view of the facts herein from which the jury could properly conclude that the instant homicide constituted second-degree murder, in that there is no evidence that Ellison's actions were done "from ill will, hatred, spite, or an evil intent."
Second-degree murder convictions have consistently been affirmed when the unintended death resulted from intentional actions toward or directed at a particular victim out of ill will, spite or malice. See Gordon v. State, 457 So.2d 1095 (Fla. 5th DCA 1984) (defendant who caused accident while intoxicated deliberately ran over another driver who attempted to block defendant's flight from the scene); Larsen v. State, 485 So.2d 1372 (Fla. 1st DCA 1986) (defendant struck partially disabled wife during argument, causing her to fall and fracture her skull); Dellinger v. State, 495 So.2d 197 (Fla. 5th DCA 1986) (defendant picked up a gun and pointed it at his wife during an argument and pulled the trigger without knowing whether or not it was loaded); Hooker v. State, 497 So.2d 982 (Fla. 2d DCA 1986) (defendant shot into a trailer which he believed to be occupied by migrant workers after going on a "mission" to rid the community of such workers); Reimel v. State, 532 So.2d 16 (Fla. 5th DCA 1988) (defendant shot victim who had hit him during an argument, when defendant was at the time seated in a running car with a clear path of flight).
Manslaughter, the killing of a human being by, among other things, the culpable negligence of another without lawful justification, § 782.07, Fla. Stat. (1987), has been found when the element of ill will, hatred, spite or evil intent is absent. A defendant is culpably negligent when he consciously follows a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights. Standard Criminal Jury Instruction on Manslaughter (October 1985).
In the instant case, there is nothing to indicate that Ellison acted out of "ill will, hatred, spite or an evil intent" toward or directed at his eventual victim; he was instead fleeing arrest and in the process lost control of his car. However, prior to the fatal accident, Ellison weaved through midday traffic at speeds exceeding the posted limits by as much as 35 M.P.H., part of the time in the confined space of a bridge. He deliberately smashed through a closed toll gate and crossed a median, then guided the car onto a well-travelled thoroughfare, still at an excessive rate of speed, so as to lose control. Under the circumstances of this case, these actions demonstrate a reckless disregard of the safety of persons exposed to its dangerous effects, a grossly careless disregard of the safety and welfare of the public, and such an indifference to the rights of others as is equivalent to an intentional violation of such rights, so as to warrant a conviction for manslaughter.
Section 924.34, Florida Statutes (1987), provides that "[w]hen the appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish his guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense" (emphasis supplied). Here, manslaughter is a necessarily lesser included offense of second-degree murder. We therefore reverse Ellison's conviction for second-degree murder, and remand with directions to enter judgment for manslaughter.
For the information of the trial court on re-sentencing, we also note that it *1007 was error to assign points on the guidelines scoresheet for "legal status at time of offense" based on Ellison's "furlough status." Rule 3.701(d)(6), Florida Rules of Criminal Procedure, specifically enumerates those categories under which an offender must fall if points for legal status are to be assessed. "Furlough status," which has its own specific legal meaning under the statutes and rules, is not enumerated therein. It is a general principle of statutory construction that the mention of one thing implies the exclusion of another: expressio unius est exclusio alterius. 49 Fla.Jur.2d Statutes § 126. Therefore, points for legal status at time of offense may not be assessed for an offender on "furlough status." See also Hannah v. State, 480 So.2d 718, 719 (Fla. 4th DCA 1986). We do not hold, however, that the trial court is barred from all consideration of Ellison's "furlough status" on re-sentencing.
Pursuant to Rule 9.030(a)(2)(A)(iv), Florida Rules of Appellate Procedure, we certify that this decision expressly and directly conflicts with a decision of another district court of appeal on the same question of law. See Butler v. State, 543 So.2d 432 (Fla. 2d DCA 1989).
Reversed and remanded with directions.
SHIVERS, C.J., and ERVIN, J., concur.