MORRIS, Judge.
 

 Charles Hicks appeals his convictions for second-degree murder, vehicular homicide, aggravated assault on a law enforcement officer, fleeing or eluding, and felony driving with a suspended license. We affirm the convictions for aggravated assault, fleeing or eluding, and driving with a suspended license, which are not being challenged on appeal. We reverse the convictions for second-degree murder and vehicular homicide and remand with directions for the trial court to vacate the conviction for vehicular homicide and to enter a conviction and sentence for manslaughter in lieu of the second-degree murder conviction.
 

 In the middle of the night on September 26, 2007, Hicks was driving a car involved in a high-speed pursuit in St. Petersburg that resulted in a deadly collision on an I-275 overpass. The pursuit began with Hicks driving through St. Petersburg at high rates of speed, running a red light, and then stopping in the middle of the road. The first police vehicle came upon the car stopped in the middle of the road, and the officer activated his take-down lights. A second police vehicle arrived and
 
 *329
 
 shined his spotlight on the car. Hicks then drove directly towards the second police vehicle but swerved away from the police vehicle before hitting it. Hicks fled from the scene and eventually drove north onto a southbound exit ramp of 1-275. Hicks proceeded northbound in the southbound lanes of 1-275 at an estimated speed of 76.5 miles per hour, causing a head-on collision with a car traveling southbound. The driver in the other car was injured, and her brother, the passenger, was killed.
 

 At trial, Hicks moved for a judgment of acquittal on the basis that the State failed to prove that Hicks was the driver of the car. The trial court denied the motion. The jury convicted Hicks as charged, and the trial court adjudicated Hicks guilty of all charges. The trial court sentenced Hicks to life in prison as a prison releasee reoffender on the second-degree murder count, to thirty years in prison as a habitual felony offender on the aggravated assault count, and to ten years in prison as a habitual felony offender on both the fleeing or eluding and the driving with suspended license counts. All sentences were ordered to run concurrently. The trial court did not sentence Hicks on the vehicular homicide count.
 

 In his first point on appeal, Hicks argues that the trial court committed fundamental error by adjudicating Hicks guilty of both vehicular homicide and second-degree murder when the convictions were based on a single death, even where the trial court did not sentence him on the vehicular homicide. He contends that the dual convictions violate his right against double jeopardy. The State concedes that the vehicular homicide conviction should be vacated.
 

 Where there is a single death, dual homicide convictions for one defendant cannot stand, even where sentencing on one conviction has been withheld.
 
 See Rodriguez v. State,
 
 875 So.2d 642, 644-16 (Fla. 2d DCA 2004);
 
 Burford v. State, 8
 
 So.3d 478, 480 (Fla. 4th DCA 2009). Hicks did not raise this issue below, but it amounts to fundamental error that may be raised for the first time on appeal.
 
 See Safrany v. State,
 
 895 So.2d 1145, 1147 (Fla. 2d DCA 2005). Accordingly, one of Hicks’s convictions must be vacated.
 

 In his second point on appeal, Hicks contends that his trial counsel was ineffective on the face of the record for failing to move for a judgment of acquittal on the second-degree murder count on the basis that the State failed to prove that Hicks committed the act with ill will, hatred, spite, or an evil intent.
 

 “The general rule is that a claim of ineffective assistance of counsel may not be raised on direct appeal.”
 
 Corzo v. State,
 
 806 So.2d 642, 645 (Fla. 2d DCA 2002). “On rare occasions, the appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable.”
 
 Id.
 

 For example, failure to move for a judgment of acquittal when the State has not proved an essential element of its case, when it is clear that the State could not reopen its case to prove that essential element, amounts to ineffective assistance of counsel that may sometimes be adequately assessed from the record on direct appeal.
 

 Id.
 

 Second-degree murder is “[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect
 
 *330
 
 the death of any particular individual.” § 782.04(2), Fla. Stat. (2007).
 

 As explained in the standard jury instructions: “An act is ‘imminently dangerous to another and demonstrating a depraved mind’ if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life.”
 

 Light v. State,
 
 841 So.2d 623, 625 (Fla. 2d DCA 2003) (footnote omitted) (quoting Fla. Std. Jury Instr. (Crim.) 98). Second-degree murder and manslaughter are the result of “criminal actions of an accused who had no premeditated design to kill” and are “committed when an unintended death occurs as a result of an act of the killer.”
 
 Ellison v. State,
 
 547 So.2d 1003, 1005-06 (Fla. 1st DCA 1989),
 
 approved in part and quashed in part on other grounds,
 
 561 So.2d 576 (Fla.1990). However, there is a difference between the two crimes; second-degree murder is committed when the element of ill will, hatred, spite, or evil intent is present.
 
 Id.
 
 at 1006. The question in this case is whether Hicks’ act of driving up the exit ramp and into oncoming interstate traffic at full interstate speed crosses the line from reckless behavior to behavior evincing malice and a depraved mind.
 
 See Light,
 
 841 So.2d at 625 n. 2 (noting that the intent required for second-degree murder mirrors the definition of malice).
 

 In
 
 Ellison,
 
 547 So.2d at 1005, the events were as follows:
 

 In May 1988, a gray Grand Am automobile was stolen from a Jacksonville mall. The following day, a police officer observed a gray Grand Am exceeding the speed limit and clocked the vehicle at 67 M.P.H. in a 35 M.P.H. zone. The officer commenced pursuit, and the car began weaving in and out of traffic at high speed, ramming through a blocked toll booth gate at an estimated speed of 65 M.P.H. The car then jumped the median onto a service road, accelerating to approximately 70 M.P.H. and, already fishtailing, entered a major thoroughfare. As it did so, the driver lost control, crossed the center line and struck another vehicle head on, fatally injuring a 16-month old baby who was a passenger in that vehicle. The baby died the next day, and Ellison was charged with depraved-mind second-degree murder. ...
 

 The court in
 
 Ellison
 
 found that “there is nothing to indicate that Ellison acted out of ‘ill will, hatred, spite or an evil intent’ toward or directed at his eventual victim; he was instead fleeing arrest and in the process lost control of his car.”
 
 Id.
 
 at 1006. The supreme court agreed with the First District that the evidence was insufficient to support a conviction for second-degree murder because “Ellison’s act of losing control of the car was not committed from ill-will or spite.”
 
 Ellison,
 
 561 So.2d at 577;
 
 see also Duckett v. State,
 
 686 So.2d 662 (Fla. 2d DCA 1996) (relying on
 
 Ellison
 
 in holding that the evidence was not sufficient to support a conviction for second-degree murder; intoxicated defendant drove erratically for several miles, almost causing two accidents, before he drove off the interstate and into a parked bus and tow truck, killing five people standing near the bus);
 
 Sigler v. State,
 
 805 So.2d 32 (Fla. 4th DCA 2001) (holding that there was nothing in the case to establish that the codefendants acted with ill will, hatred, spite, or an evil intent; in attempt to evade police during high-speed chase in the middle of the day, codefendants Sigler and Michelson accelerated to speeds of 80 m.p.h. and drove through one stop sign, across a transverse street, through anoth
 
 *331
 
 er stop sign and across a second transverse street, crashing into another car and killing its passenger);
 
 Michelson v. State,
 
 805 So.2d 983 (Fla. 4th DCA 2001) (same);
 
 cf. Gordon v. State,
 
 457 So.2d 1095 (Fla. 5th DCA 1984) (affirming second-degree murder conviction because defendant’s actions showed ill will towards victim; defendant attempted to flee an accident he had caused by pulling out of the blocked traffic lane and accelerating, and when the victim stepped out to flag him down, she was hit by defendant, thrown ahead of defendant’s truck, and run over by defendant).
 

 The State did not present evidence that Hicks acted with hatred, spite, evil intent, or ill will towards the victim. The victim’s sister testified that at the time of the collision, “[t]here really wasn’t anything going on the roads. It was later.” The officers testified that the pursuit occurred around 2 a.m. The victim’s sister was driving up an overpass when she saw the headlights of Hicks’ car at the top of the hill. She tried to veer away but did not have enough time before the collision occurred. In applying
 
 Ellison
 
 to the instant case, while the act of driving in the opposite direction on the interstate was indeed done with a reckless disregard to human life, there was no evidence that the act was done with hatred, spite, evil intent, or ill will towards the occupants of the other car.
 

 “[E]xtremely reckless behavior itself is insufficient from which to infer any malice.”
 
 Light,
 
 841 So.2d at 626. “Although exceptions exist, the crime of second-degree murder is normally committed by a person who knows the victim and has had time to develop a level of enmity toward the victim. Hatred, spite, evil intent, or ill will usually require more than an instant to develop.”
 
 Id.
 
 (citations omitted). Here, Hicks did not have time to develop a level of enmity toward the victim. The cars approached each other on an overpass, and the drivers did not see each other until it was too late.
 

 It is clear from the face of the record in this case that the State failed to present evidence to prove the necessary intent for second-degree murder. It is also clear that the State could not have reopened its case to prove the necessary intent and that there is no reasonable tactical explanation for counsel’s failure to raise this issue. Therefore, Hicks’ trial counsel was ineffective for failing to move for a judgment of acquittal on this basis.
 

 Accordingly, we reverse Hicks’s conviction and sentence for second-degree murder with directions for the trial court to enter a judgment and sentence for the lesser-included offense of manslaughter.
 
 See Duckett,
 
 686 So.2d at 663;
 
 Ellison,
 
 547 So.2d at 1006. As discussed above, dual convictions for manslaughter and vehicular homicide based on one death cannot stand. We reverse and remand for the trial court to vacate the vehicular homicide conviction, the lesser of the two convictions.
 
 [1]
 

 See Burford,
 
 8 So.3d at 479.
 

 Affirmed in part, reversed in part, and remanded.
 

 CASANUEVA, C.J., and CRENSHAW J., Concur.
 

 [1]
 

 . Both are second-degree felonies, but manslaughter is a qualifying offense for prison releasee reoffender sentencing, while vehicular homicide is not.
 
 See
 
 § 775.082(9)(a)(l)(c), Fla. Stat. (2007).