ROTHENBERG, J.
 

 The defendant, Baron Moore, appeals from his conviction and sentence for the second-degree murder of Keith Culbertson (“the victim”). For the reasons that follow, we affirm.
 

 The evidence presented at trial revealed that the victim was last seen on August 2, 2003, as he was getting into his vehicle, a Toyota 4Runner SUV, which contained numerous Scooby-Doo items. A couple of weeks later, the -victim’s 4Runner was located, and it was later determined that the blood stain on the front seat matched the victim’s DNA. Following a tip, the police found the victim’s decomposed body in a field, and during a search warrant executed at the defendant’s home, they found Scooby-Doo items taken from the victim’s 4Runner.
 

 Dr. Lew, a medical examiner, testified that the victim was shot three times in the face and once in the neck, and over objection, the State introduced a photograph of the victim’s skull. Dr. Lew opined that the victim’s body had been dragged to where it was discovered because small rocks were found in the waistband of the
 
 *242
 
 victim’s boxer shorts, which were partially down. Dr. Lew testified that the presence of these rocks in the victim’s waistband suggested that the victim’s pants were down before he was dragged across the field.
 

 At trial, the State presented the testimony of four witnesses to connect the defendant to the victim’s murder. First, Jerome Bozeman testified that when he went to the defendant’s home to obtain a weapon, the defendant offered him a .357 caliber firearm. Bozeman asked the defendant if there were any “bodies” on the gun, meaning had the gun been used in a prior homicide. When the defendant answered “yes,” Bozeman did not take the gun.
 

 Next, Talesha Sprately, the mother of the defendant’s son, testified that on August 6, 2003, she saw the defendant driving a 4Runner, and during the following week while driving the vehicle, she noticed that it contained Scooby-Doo items, and there were stains in the car that had a bad odor. Although Sprately admitted that she told her friend, Ramonta Thompson, that she had seen the vehicle on the news, she denied telling Thompson that she knew where the victim’s body was buried, and she denied telling the police the defendant had admitted to killing the victim. The State, however, impeached Sprately with her prior statement, wherein she told the police the defendant had admitted to killing the victim.
 

 Ramonta Thompson testified that she saw Sprately driving an SUV with the defendant as a passenger, and after seeing the vehicle on the news, she told Sprately to call crime stoppers. Thompson called in the tip, and the next day, both Sprately and Thompson went to the police station. That evening, Sprately told Thompson that when the defendant learned they had gone to the police station, he became angry and he told Sprately that he had dumped the body. Thompson testified that she called the police and gave them this additional information.
 

 Lastly, T’Aundra Reese testified that in July 2003, the defendant gave her a .38 caliber revolver, and in early August 2003, he asked her to return it. A few days later, he returned to her home in an excited state, and borrowed her phone to call Sprately. It appeared to Reese that the defendant’s shirt had a blood stain. Subsequently, the defendant returned to Reese’s home driving an SUV. Reese admitted that she informed the police that the defendant told her he had killed a “faggot” and then hid the body.
 

 Prior to closing arguments, the defense filed a motion in limine seeking to prevent the State from arguing that the murder was the result of a sexual relationship or that, there was sexual activity between the victim and assailant. In granting the motion, the trial court instructed the State as follows: “I don’t want you to have this jury speculate that the defendant had a sexual relationship with the defendant [sic] when there’s no evidence of that.”
 

 During closing arguments, without objection, the State argued that the evidence showed that the defendant knew the victim was gay, and the defendant told another person that if the victim’s body was ever discovered, the victim would be found with his pants down. Thereafter, the State argued: “[W]hen you look at the exact circumstances surrounding the entire incident that happened to Keith, and everything that happened in the close quarters of that car, there Keith is in the front seat of this car with his pants down, and he died?” The defense objected, arguing that there was no evidence to support the prosecutor’s statement. The trial court overruled the objection,' and instructed the jury to rely on its own recollection. Thereafter, at a sidebar confer
 
 *243
 
 ence, defense counsel moved for a mistrial, and the trial court denied the motion.
 

 The trial court instructed the jury as follows on the lesser included offense of manslaughter:
 

 1. Keith Culbertson is dead;
 

 2.a.' Baron Moore intentionally caused the death of Keith Culbertson, or
 

 b. The death of Keith Culbertson was caused by the culpable negligence of Baron Moore.
 

 However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.
 

 In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death,
 
 only an intent to commit an act which caused death.
 

 I will now define “culpable, negligence” for you.... [Cjulpable negligence is more than a failure to use ordinary care toward others. In order for negligence to be culpable, it must be gross and flagrant. Culpable negligence is a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard for the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.
 

 The negligent act or omission must have been committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury.
 

 (Emphasis added).
 

 The jury found the defendant guilty of second-degree murder. The defendant filed a supplemental motion for new trial, arguing that he was entitled to a new trial because the trial court improperly instructed the jury that for manslaughter by intentional act, the jury had to find that the defendant intentionally caused the death of the victim. The motion was denied. The defendant was then sentenced to life in prison. This timely appeal followed.
 

 First, the defendant contends that the trial court abused its discretion by admitting into evidence a photograph of the victim’s skull where the photograph had no relevance to any issue at trial and was highly prejudicial. We disagree.
 

 “Photographs are admissible if they are relevant and not so shocking in nature as to defeat the value of their relevance.”
 
 Czubak v. State,
 
 570 So.2d 925, 928 (Fla.1990);
 
 see also Almeida v. State,
 
 748 So.2d 922, 929 (Fla.1999) (“To be relevant, a photo of a deceased victim must be probative of an issue
 
 that is in dispute.”).
 
 In the instant case, the State argued that the photograph of the skull was relevant to establish that the victim was shot three times in the face, causing extensive trauma to the victim’s teeth and upper jaw. The manner in which the victim was shot was relevant to establish an issue that was in dispute — whether the defendant acted with ill will, hatred, spite, or evil intent, .which is an element of second-degree murder.
 
 See Hicks v. State,
 
 41 So.3d 327, 330 (Fla. 2d DCA 2010) (stating that second-degree murder, unlike manslaughter, “is committed when' the element of ill will, hatred, spite, or evil intent is present”);
 
 see also Light v. State,
 
 841 So.2d 623, 625 n. 2 (Fla.
 
 *244
 
 2d DCA 2003) (noting that the intent required for second-degree murder — ill will, hatred, spite or an evil intent — mirrors the definition of “malice”). The photograph supports the State’s argument that the victim’s death was not the result of an impulsive or reckless act, but rather an act that was committed with ill will, hatred, spite, or evil intent. Finally, the photograph was “not so shocking in nature as to defeat the value of their relevance.”
 
 Czubak v. State,
 
 570 So.2d at 928. As recognized by the trial court, “I don’t think there’s a human being that has not seen a skull or a mandible.” Accordingly, we conclude that the trial court did not abuse its discretion by admitting into evidence the photograph of the victim’s skull.
 

 Next, the defendant contends-that the trial court abused its discretion by denying his motion for mistrial following the prosecutor’s comment during closing argument. He argues that the comment suggested that some type of sexual activity occurred in the vehicle or that the defendant committed an uncharged crime, where there was no evidence to support the prosecutor’s argument.
 
 See Anderson v. State,
 
 841 So.2d 390, 403 (Fla.2003) (“A ruling on a motion for mistrial is within the trial court’s discretion.”).
 

 A review of the trial transcript reveals that the prosecutor did not suggest the defendant committed an uncharged crime or that some type of sexual activity occurred in the vehicle. Rather, the record reflects that the prosecutor’s statement was made in support of the State’s theory that the victim was killed because of his sexual orientation, and that the defendant acted with malice.
 
 See Breedlove v. State,
 
 413 So.2d 1, 8 (Fla.1982) (“Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.”). The testimony clearly reflects that the defendant knew the victim was gay, and after killing the victim, he told T’Aundra Reese that he killed a “faggot.” Further, based on the medical examiner’s testimony, the State’s comment was supported by the evidence. The victim was found in a field with his shorts partially down with his buttocks exposed, pebbles were found in the waistband of his boxer shorts, and the medical examiner testified that the evidence suggested the victim’s shorts were down before he was dragged through the field. Because the complained-of comment was relevant, there was sufficient evidence to support the prosecutor’s comment, and the comment did not violate the trial court’s ruling on the motion in limine, we conclude that the trial court did not abuse its discretion by denying the defendant’s motion for mistrial.
 

 Lastly, the defendant contends that, although defense counsel did not object to the jury instruction given on the lesser included offense of manslaughter by intentional act, pursuant to
 
 State v. Montgomery,
 
 39 So.3d 252 (Fla.2010), the instruction constitutes fundamental error. Because the instruction given differs from the instruction given in
 
 Montgomery,
 
 and the jury was also instructed on manslaughter by culpable negligence, we find no fundamental error.
 

 Unlike the instruction given in
 
 Montgomery,
 
 in the instant case, the jury received the instruction that was approved by the Florida Supreme Court in 2008, which materially differs from the
 
 Montgomery
 
 instruction. Specifically, the manslaughter instruction given in
 
 Montgomery
 
 was subsequently modified and approved by the Florida Supreme Court by adding the underlined language: “In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death,
 
 only an intent to commit an action'which caused death.” In re Standard Jury Instructions in Criminal
 
 
 *245
 

 Cases-Report No. 2007-10,
 
 997 So.2d 403, 403 (Fla.2008);
 
 see also Morgan v. State,
 
 42 So.3d 862, 863 (Fla. 4th DCA 2010) (concluding that the instruction given was consistent with the 2008 amendment to the standard jury instructions, the instruction given materially differed from the
 
 Montgomery
 
 instruction, and no fundamental error occurred).
 

 More importantly, following the Florida Supreme Court’s-decision in
 
 Montgomery,
 
 this Court, in
 
 Cubelo v. State,
 
 41 So.3d 263 (Fla. 3d DCA 2010), held that, because the jury was instructed on both manslaughter by intentional act and manslaughter by culpable negligence, there was no fundamental error requiring reversal of Cubelo’s conviction for second-degree murder.
 
 Id.
 
 at 268;
 
 see also Daniels v. State,
 
 46 So.3d 630, 630 (Fla. 3d DCA 2010) (finding no fundamental error where the manslaughter by culpable negligence instruction was also given, and distinguishing
 
 Montgomery); Guerra v. State,
 
 44 So.3d 226, 226 (Fla. 3d DCA 2010) (same);
 
 Salonko v. State,
 
 42 So.3d 801, 802-03 (Fla. 1st DCA 2010) (distinguishing
 
 Montgomery,
 
 noting that the jury was also instructed on culpable negligence, and finding no fundamental or reversible error).
 
 [1]
 
 In the instant case, as in
 
 Cúbelo
 
 and the aforementioned cases, the jury was instructed on both manslaughter by intentional act and manslaughter by culpable negligence. Therefore, we conclude that there was no fundamental error requiring reversal of the defendant’s conviction for second-degree murder.
 

 Affirmed.
 

 [1]
 

 . We acknowledge that our decision in this respect directly conflicts with the decisions in the First District Court of Appeal in
 
 Riesel v. State,
 
 48 So.3d 885 (Fla. 1st DCA 2010),
 
 Pryor
 
 v.
 
 State,
 
 48 So.3d 159 (Fla. 1st DCA 2010), and
 
 Williams
 
 v.
 
 State,
 
 50 So.3d 1207 (Fla. 1st DCA 2010).