NORTHCUTT, Judge.
A jury convicted Dana Guarscio of exploitation of an elderly person, grand theft from a person over age sixty-five, and four counts of uttering a forged instrument. However, the evidence failed to prove a necessary element of the exploitation offense, and we reverse that conviction. The evidence also was insufficient to prove a second-degree grand theft. We reverse that conviction with directions to reduce it to a third-degree felony. We affirm without further comment Guarscio’s convictions for four counts of uttering forged instruments.
The victim in this case was Guarscio’s grandmother, Helen Woichowski, who lived with Guarscio and Guarscio’s son. The evidence showed that Woichowski essentially raised her granddaughter in Connecticut and continuously helped to support Guarscio thereafter. In 1995, Guarscio and her son moved to Florida. Woichowski joined them in 1999. At that time, Woichowski was in her early eighties and had recently survived both a heart attack and a bout with cancer. Woichow-ski bought a house in Sarasota, and the family lived there together. The house was titled in a land trust with Woichowski and Guarscio named as cotrustees. Woi-chowski received income from social security and a small pension. Guarscio worked sporadically in low-wage positions.
When Woichowski purchased the home, the mortgage debt was about $47,000. However, over an eighteen-month period beginning in 2003, the mortgage was refinanced three times, increasing the mortgage indebtedness by approximately $100,000. Proceeds from the first refinancing were used to pay for Guarscio’s wedding and to set her and her new husband up in a painting business. But the marriage and the business failed within a year. Some portion of the next refinanc *148 ing was used to pay for Guarscio’s divorce. Although Woichowski’s fixed income and Guarscio’s meager earnings had been sufficient to make ends meet initially, the family struggled with a mortgage payment that basically doubled after the refinancings. Still, the grandmother continued to support Guarscio and her son, buying Guar-scio a car and paying for gifts and trips.
Events took a critical turn in November 2005, when Woichowski suffered a stroke. She was in intensive care for several days, during which Guarscio was responsible for medical decisions as her grandmother’s health care surrogate. Guarscio also held her grandmother’s durable power of attorney, but it could be activated only by two doctors’ opinions that Woichowski was incapacitated; no such opinions were ever rendered. Woichowski recovered enough to return home briefly, but concerns for her safety when left alone necessitated her admission into a nursing facility. Guarscio was working part-time at a gas station in the mornings and a few evenings a week at another job. Woichowski was admitted to a nursing facility seemingly with the expectation that she would remain there for only a few weeks.
At the nursing home, a social worker became concerned about Woichowski’s welfare. Her dealings with Guarscio gave her little reassurance, so she made a referral to a local guardianship program. The guardian met with Woichowski in early March 2006 and found her to be confused and upset. The guardian looked into Woi-chowski’s financial situation and discovered that it was a mess. By this time, the house was on the verge of foreclosure, and Woichowski’s limited income was needed for her care. A voluntary guardianship was arranged. By mid-March, Guarscio was notified by mail and by the guardian personally that the power of attorney had been revoked and that she should not be writing checks on Woichowski’s bank account. In the meantime, Guarscio had arranged to sell the house in order to avoid the foreclosure. The guardian eventually agreed that the sale was in Woi-chowski’s best interest. The proceeds from the sale, approximately $72,000, were placed in escrow.
Based on the guardian’s investigation into Woichowski’s finances, the State brought criminal charges against Guarscio. Count one alleged exploitation of the elderly in the amount of $100,000 or more occurring between April 2008 and May 2006. Count two alleged grand theft of U.S. currency, over $10,000 but less than $50,000, occurring during the same three-year time span; the grand theft charge further alleged that the victim was over the age of sixty-five. The next four counts alleged that Guarscio uttered forged instruments, based on four checks written in late March and April 2006, after the guardian instructed her to cease writing checks on Woi-chowski’s account. As mentioned, Guar-scio was convicted on all counts.
Guarscio argues on appeal for judgments of acquittal. Applying a de novo standard, we review the issue to determine whether the convictions were supported by competent, substantial evidence. See Pagan v. State, 830 So.2d 792, 803-04 (Fla.2002). In the absence of specific arguments for acquittal below, Guarscio contends that the issue should be addressed as a claim of ineffective assistance apparent on the face of the record or as an issue of fundamental error because the State failed to carry its burden of proving essential elements of the crimes. See, e.g., Hicks v. State, 41 So.3d 327 (Fla. 2d DCA 2010) (describing ineffective assistance on the face of the record when defense counsel failed to move for a judgment of acquittal); F.B. v. State, 852 So.2d 226 (Fla.2003) (explaining fundamental error when evi *149 dence failed to show crime was committed). We review the convictions in this light.
The fourth amended information charged Guarscio with exploitation of an elderly person in violation of section 825.103(1)(a) and (2)(a), Florida Statutes (2002). Subsection (2)(a) makes the crime a first-degree felony when the amount involved is $100,000 or more. Subsection (1)(a) describes the other elements of the crime. In pertinent part, it states:
(1) “Exploitation of an elderly person or disabled adult” means:
(a) Knowingly, by deception or intimidation, obtaining or using, or endeavoring to obtain or use, an elderly person’s or disabled adult’s funds, assets, or property with the intent to temporarily or permanently deprive the elderly person or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elderly person or disabled adult, by a person who:
1.Stands in a position of trust and confidence with the elderly person or disabled adult....
§ 825.103(l)(a) (emphasis supplied). The State was thus required to prove that Guarscio obtained her grandmother’s property “by deception or intimidation.”
For purposes of the statute, “Deception” means:
(a) Misrepresenting or concealing a material fact relating to:
1. Services rendered, disposition of property, or use of property, when such services or property are intended to benefit an elderly person or disabled adult;
2. Terms of a contract or agreement entered into with an elderly person or disabled adult; or
3.An existing or preexisting condition of any property involved in a contract or agreement entered into with an elderly person or disabled adult; or
(b) Using any misrepresentation, false pretense, or false promise in order to induce, encourage, or solicit an elderly person or disabled adult to enter into a contract or agreement.
§ 825.101(3). “Intimidation” is defined as “the communication by word or act to an elderly person or disabled adult that the elderly person or disabled adult will be deprived of food, nutrition, clothing, shelter, supervision, medicine, medical services, money, or financial support or will suffer physical violence.” § 825.101(8).
On this charge, the State’s case was based on the multiple refinancings and Guarscio’s use of money obtained from them. The record reflects that the State proved that the house was refinanced and that the money was spent on the family, including Guarscio. But it presented no evidence that Guarscio intimidated or deceived her grandmother into doing either. The State presented a closing statement from the last refinancing, and it was signed by both Woichowski and Guarscio. But nothing more is known about Guar-scio’s involvement in those transactions. When we review the evidence of the three refinancings, we cannot avoid the conclusion that the State’s evidence was only that the transactions occurred. Certainly, there is a reasonable inference from the evidence that the refinancings were not a good idea, but that is a far cry from proof that they were accomplished by Guarscio’s deception or intimidation of her grandmother. See Bernau v. State, 891 So.2d 1229, 1232 (Fla. 2d DCA 2005) (reversing conviction for exploitation of elderly when State failed to prove that son acquired significant assets from elderly parents through deception or intimidation, even *150 though evidence showed that “such a gift ... under the circumstances exhibits extremely poor judgment on the part of the parents”). The State having failed to prove an element of the crime, we must reverse Guarscio’s conviction for exploitation of the elderly.
The fourth amended information also charged Guarscio with grand theft from a person sixty-five years of age or older of an amount between $10,000 and $50,000 in violation of sections 812.014(1) and .0145(2)(b), Florida Statutes (2002). “A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property.” § 812.014(1)(a). When the defendant knows or has reason to know that the victim is sixty-five or older and the amount is between $10,000 and $50,000, the crime is a second-degree felony. § 812.0145(2)(b). When the amount is $800 or more but less than $10,000, the crime is a third-degree felony. § 812.0145(2)(c). Guarscio was convicted of the second-degree felony.
We have closely scrutinized the extensive evidence in this case but have not found sufficient proof of a theft of $10,000 or more. In this regard, it is important to note that the State’s proof included transactions predating Woichowski’s stroke. And, to be sure, prior to the stroke checks were written on Woichowski’s account to Guarscio and funds were transferred from Woichowski’s account to Guarscio’s account. But no evidence suggested that those transactions were anything other than gifts or were not fully consistent with Woichowski’s longstanding, voluntary support of her granddaughter.
Indeed, at Guarscio’s trial there was ample testimony about Woichowski’s finances and about her poor health following her stroke. But only one State witness testified to Woichowski’s health before the stroke. Woichowski’s doctor had treated her almost continuously since 1999. The doctor testified that she “suspected” Woi-chowski had some mild cognitive dysfunction that was age-related. But Woichow-ski was never tested for dementia, and the doctor never made a formal diagnosis. The doctor said that Guarscio was the one who brought Woichowski to every appointment, but the doctor did not testify that she ever told Guarscio of her suspicions about Woichowski’s mental condition. Beyond the doctor’s unproved suspicions, the State tendered no evidence that Woichow-ski suffered a significant cognitive impairment prior to her stroke. Even assuming that she did, the State did not prove that Guarscio knew or should have known about it.
Of course, the period following the stroke was a different matter. In Deranger v. State, 652 So.2d 400, 401 (Fla. 2d DCA 1995), this court affirmed grand theft convictions resulting from an “unusual number of sizable checks” written over a two-year period by a victim showing symptoms of “reduced mental capacity.” We noted that theft is not shown when an owner gives property to another unless there was “evidence that the defendant knew the victim lacked the mental capacity to consent to the taking of his or her property.” Id. at 401.
In this case, the State proved that after Woichowski’s stroke, Guarscio cashed checks totaling just under $5000. Thus, the State proved a third-degree felony under section 812.0145(2)(c). On remand, the court shall reduce Guarscio’s grand theft conviction to third-degree grand theft from an elderly person.
Guarscio’s convictions for uttering forged instruments are affirmed. Her *151 conviction for second-degree grand theft from an elderly person is reversed with directions to instead convict her of third-degree grand theft from an elderly person. Her conviction for exploitation of an elderly person is reversed with directions to acquit and discharge her on that charge.
Affirmed in part, reversed in part, and remanded.
LaROSE and CRENSHAW, JJ, Concur.