SILBERMAN, Chief Judge.
The charges in this case arose after Kevin Black struck two people with his automobile, injuring one victim and killing another victim and her unborn fetus. For these crimes, a jury convicted Black of two counts of second-degree murder, one count of attempted second-degree murder, and one count of leaving the scene of an accident involving injury. We affirm Black’s convictions and sentences but write to discuss his claims of error regarding the sufficiency of the evidence to support the murder and attempted murder convictions and the propriety of the jury instruction on the lesser-included offense of intentional act manslaughter.
During either the late evening hours of May 17, 2007, or the early morning hours of May 18, 2007, Black called a friend and told her that he could not take his life anymore. He said that he wanted to kill himself and that he intended to make big headlines and go out with a bang. He apparently set out to accomplish this mission shortly after 6:15 a.m. on May 18th. Black got into his Honda Accord and went on a deadly rampage that involved two separate collisions with innocent people on the streets and ended when his car collided with a tree.
Willie Grimsley, the first victim, described the first collision and Black’s actions. Grimsley was standing with other would-be laborers in a parking lot outside a labor pool. He heard a driver in the street slam on his brakes. The driver, who was later identified as Black, turned into the parking lot and accelerated in a straight line directly into the group. Black struck a man on a bicycle, and the man fell off and knocked Grimsley down. Black then struck Grimsley and pinned him against a parked car. As Grimsley looked on, Black backed up and drove out of the parking lot. Black headed away in the same direction he had been traveling before driving directly at the group.
At about 6:47 a.m., a police officer received a dispatch about the crash at the labor pool location. It took him about a minute to arrive at the scene. He encountered Grimsley and the bicyclist lying on the ground and waited for EMS to arrive. The officer put out a BOLO for Black’s vehicle, and his partner found the Accord crashed into a tree approximately three-quarters of a mile away. A witness to the second crash had observed Black’s car drive down the street, cross into the oncoming lane of traffic, and veer diagonally toward a woman on the sidewalk. The woman, who was seven months pregnant, unsuccessfully tried to dodge the car. The car hit the woman, lifted her up, and then hit her again. Both she and her unborn fetus were killed.
I. Sufficiency of the Evidence
Black argues that the trial court erred in denying his motion for judgment of acquittal on the murder and attempted murder charges because the State presented insufficient evidence that he acted with the requisite malice. He argues that his *886 conduct may have been reckless but it did not evince malice and a depraved mind. He relies on a line of cases reversing second-degree murder convictions involving reckless driving based on the State’s failure to prove malice. See Hicks v. State, 41 So.3d 327 (Fla. 2d DCA 2010); Michelson v. State, 805 So.2d 983 (Fla. 4th DCA 2001); Ellison v. State, 547 So.2d 1003 (Fla. 1st DCA 1989), approved in part, quashed in part, 561 So.2d 576 (Fla.1990).
This court conducts a de novo review of the denial of a motion for judgment of acquittal. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002). A conviction should not be reversed if it is supported by competent, substantial evidence. “If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.” Id.
Section 782.04(2), Florida Statutes (2007), defines second-degree murder as “[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.”
Conduct that is “imminently dangerous to another and evincing a depraved mind” is characterized by “an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life.”
State v. Montgomery, 39 So.3d 252, 255-56 (Fla.2010) (quoting Bellamy v. State, 977 So.2d 682, 683 (Fla. 2d DCA 2008)). The words “ill will, hatred, spite, or evil intent” equate to actual malice. Reed v. State, 837 So.2d 366, 368-69 (Fla.2002).
Black claims that there was no evidence that he bore the victims any ill will, hatred, or spite, or that he had an evil intent to hit them. We disagree and conclude that the State presented sufficient evidence to allow the jury to determine that Black acted with actual malice.
“Intent, being a state of mind, must in most cases be inferred from the circumstances.” Williams v. State, 239 So.2d 127, 130 (Fla. 4th DCA 1970). Shortly after threatening to kill himself by going out with a bang and making headlines, Black drove his car along the road, slammed on his brakes, turned, and careened his vehicle into a parking lot containing a group of people. Instead of taking any evasive maneuvers, he accelerated into the group and hit Grimsley. Black did not stop to render aid but backed away and sped off. Within minutes, he steered his car across the road and directly towards the woman on the sidewalk. It was reasonable for the jury to infer from Black’s actions that he was attempting to carry out his threat to commit suicide and that he intended to make his headlines by killing or seriously injuring innocent bystanders. Such a plan evinces ill will, hatred, spite, or an evil intent. See Anderson v. State, 254 Ga. 470, 330 S.E.2d 592, 594-95 (1985) (affirming malice murder conviction of defendant who drove his car at a high speed into oncoming traffic in an attempt to commit suicide by colliding with the victim’s car).
We cannot agree that Hicks, Michelson, and Ellison, as relied on by Black, require a contrary conclusion. In those cases, the courts reversed second-degree murder convictions based on reckless driving that resulted in death and injury to others but *887 for which there was no evidence of actual malice toward the victims. See Hicks, 41 So.3d at 331; Michelson, 805 So.2d at 985; Ellison, 547 So.2d at 1006. A close examination of the facts of Hicks, Michelson, and Ellison reflects that the cases simply are not analogous to this case.
In Hicks, a defendant who was fleeing the police drove in the wrong direction on an interstate exit ramp and collided head-on with a car, injuring the driver and killing her passenger. 41 So.3d at 329. The driver testified that she was driving on an overpass when she saw the headlights of the defendant’s car. Id. at 331. She tried to avoid the collision, but she did not have enough time. A jury convicted the defendant of second-degree murder based on the death of the passenger. Id. at 329.
On appeal, this court found that trial counsel was ineffective for failing to move for a judgment of acquittal on this count. Id. at 331. We concluded that a judgment of acquittal would have been granted because the evidence did not establish that the defendant acted with the requisite malice. We noted that generally, second-degree murder is committed by a person who knows the victim and has developed some sort of enmity toward him or her. Id. (quoting Light v. State, 841 So.2d 623, 626 (Fla. 2d DCA 2003)). We acknowledged that driving in the opposite direction on an interstate was certainly reckless, but we explained that the defendant did not have time to develop any enmity toward the victim. In fact, the evidence established that the drivers did not see each other until it was too late to avoid a collision. We held that, without more, “ ‘[EJxtremely reckless behavior itself is insufficient from which to infer any malice.’ ” Id. (alteration in Hicks) (quoting Light, 841 So.2d at 626).
In Michelson and Ellison, the defendants were similarly fleeing the police when they were involved in collisions that resulted in the death of the occupants. See 805 So.2d at 984; 547 So.2d at 1005. In Michelson, the defendant was transporting an escaped convict when a police officer activated his lights and siren. 805 So.2d at 984. The defendant panicked and accelerated, running two stop signs. After running the second stop sign, the defendant crashed into a vehicle that had the right of way and killed the driver. The encounter lasted no more than thirty seconds from start to finish.
In Ellison, the defendant was speeding when a police officer attempted to stop him. 547 So.2d at 1005. The car kept speeding, rammed a blocked toll booth gate, jumped the median onto a service road, and entered a major roadway. At that point, the defendant lost control of the vehicle, which crossed the center line and struck another vehicle head-on, injuring a passenger who died the next day. As in Hicks, the courts in Michelson and Ellison reversed the defendants’ second-degree murder convictions. 805 So.2d at 986; 547 So.2d at 1007. Both courts concluded that there was nothing in the record to establish that the defendant acted with malice toward the victims. 805 So.2d at 985; 547 So.2d at 1006.
In all three of these cases on which Black relies, the defendant’s motive for driving recklessly was to elude capture by the police. Here, however, there was no evidence that Black was fleeing the police. In fact, the officers did not come upon his vehicle until after the second collision. Instead, the only evidence of Black’s intent established that he was on a suicide mission that involved making big headlines and going out with a bang. His actions were fully consistent with his own stated intent. And there was no evidence that *888 Black failed to see the victims until it was too late, as in Hicks and Michelson, or lost control over his vehicle, as in Ellison. Rather, he drove directly into one victim, backed away from the scene, and almost immediately drove across two lanes of traffic directly into the second and third victims.
We are mindful of this court’s observation in Hicks that second-degree murder generally involves a defendant who knows the victim or bears enmity towards the victim. See Hicks, 41 So.3d at 331 (quoting Light, 841 So.2d at 626). However, section 782.04(2) does not require such a relationship between the defendant and the victim. In fact, malice murder convictions have been affirmed based on similar evidence of the defendant’s use of his vehicle to kill perfect strangers. See, e.g., Anderson, 330 S.E.2d at 594-95; People v. Gomez, 65 N.Y.2d 9, 489 N.Y.S.2d 156, 478 N.E.2d 759, 760-62 (1985) (affirming second-degree murder conviction of defendant whose vehicle sped down a crowded sidewalk and struck a child then proceeded down a second sidewalk and struck another child).
Accordingly, we conclude that the State presented sufficient evidence of malice to withstand the motion for judgment of acquittal.
II. Manslaughter Jury Instruction
Black also argues that the trial court committed fundamental error by giving an erroneous jury instruction on the lesser-included offense of intentional act manslaughter. The instruction on manslaughter by act that was given at trial provided:
The lesser included crimes indicated in the definition of second degree murder with a weapon are manslaughter and vehicular homicide.
Manslaughter.
To prove the crime of manslaughter the State must prove the following two elements beyond a reasonable doubt:
One, Marie Jesus [Diego] is dead.
And two, Kevin Jerome Black intentionally caused the death of Marie Jesus Diego or the death of Marie Jesus Diego was caused by the culpable negligence of Kevin Jerome Black.
However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I’ve previously explained those terms to you earlier.
In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to commit [sic] to cause death, only an intent to commit an act which caused death.
Black argues that this instruction .is equivalent to the standard instruction on manslaughter by act that the supreme court determined was erroneous in State v. Montgomery, 39 So.3d 252, 257 (Fla.2010). However, the instruction is different than that given in Montgomery and equivalent to the amended standard instruction which this court recently held was not erroneous in Daniels v. State, 72 So.3d 227 (Fla. 2d DCA 2011), review granted, 79 So.3d 744 (Fla.2012), and Pharisien v. State, 74 So.3d 156 (Fla. 2d DCA 2011). But see Riesel v. State, 48 So.3d 885, 886 (Fla. 1st DCA 2010) (holding that the instruction at issue was erroneous under the same reasoning as employed in Montgomery), review denied, 66 So.3d 304 (Fla.2011).
Even if this instruction were erroneous, it must rise to the level of fundamental error to require reversal because Black did not object to it and indeed, he requested the instruction that was given. This court has repeatedly held that an erroneous instruction on manslaughter by act does not *889 constitute fundamental error when the jury is also instructed on the lesser-included offense of manslaughter by culpable negligence. See Haygood v. State, 54 So.3d 1035, 1037 (Fla. 2d DCA 2011), review granted, 61 So.3d 410 (Fla.2011); Barros-Dias v. State, 41 So.3d 370, 372 (Fla. 2d DCA 2010); Nieves v. State, 22 So.3d 691, 692 (Fla. 2d DCA 2009). Because the jury was also instructed on manslaughter by culpable negligence in this case, any error in the manslaughter by act instruction was not fundamental.
Affirmed.
WHATLEY, J., Concurs.
NORTHCUTT, J., Dissents with opinion.